Eastern Dist.
December, 1840.

CARROLLTON
BANK
vs.
TAYLEUR ET AL.

CARROLLTON BANK *vs.* TAYLEUR ET AL.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

A promise to accept, contemplates a specific bill or bills, whether drawn or to be drawn, and not a general authority to draw to a certain amount, without any description of the bills. In the latter case it will not be such an implied acceptance or promise to accept, as will bind the drawee.

So, a letter of credit, within a reasonable time before or after the date of the bill, describing and promising to accept it, if shown to a person who takes the bill on the faith of the letter, is a virtual acceptance.

But where bills are drawn and sold to a third person, on a letter of the drawee, written to the drawer, allowing the latter *a limited credit, available on certain conditions*, the drawee is under no obligation, express or implied, to the holders to accept the bills.

Letters of credit should be addressed to the persons who advance the funds, or buy the bills drawn under it; and then they become the mandatories of the drawee or writer, and have nothing to do with the equities or relations between the drawer and drawee.

This is an action to recover the balance due on four bills of Exchange, with interest, damages and costs, drawn by James Grimshaw, of New-Orleans, in March and April, 1839, on the defendants, Charles Tayleur, Son & Co., merchants in Liverpool, payable in London, 60 days after sight, which were refused acceptance and protested for non-payment. The plaintiffs show that they were the purchasers and are the holders of said bills, which they took from James Grimshaw, the drawer thereof, on the faith of a letter of credit, written by said Tayleur, Sons & Co., dated at Liverpool, the 7th December, 1838, addressed to said Grimshaw, " giving him an open credit for *ten thousand pounds sterling,*" on which he was authorized to draw, and they were bound to pay his drafts so drawn ; that on exhibiting this letter, and depositing it with the plaintiffs, they were induced to buy said drafts from Grimshaw, and which they consider a virtual acceptance by the defendants, and that they are liable and

bound to pay the same; wherefore, they pray judgment; and that property of the defendants, within the jurisdiction of this court, be attached and made subject to the satisfaction of said judgment.

The defendants admitted they wrote the letter of the date mentioned, addressed to James Grimshaw, giving him an open credit of ten thousand pounds sterling, available as often as his drafts drawn on said credit should be covered by satisfactory remittances in bills, specie or produce, so as they should not at any time be brought under acceptances for more than that sum, and with the understanding that, before or at the close of the season, the probable balance against him should be remitted for. They further aver, they have fully complied with their obligations to Grimshaw, and that at the time when the bills were dishonored, they were already under acceptance for a sum exceeding in amount the sum authorized, and consequently not bound to accept these drafts. They put the plaintiffs on strict proof that they took the bills in question on the faith of the letter of credit, and pray judgment in their behalf.

On these pleadings and issues the cause was tried before the court.

The case mainly turned on the questions: *First*, whether the defendants were bound to third persons on their letter to Grimshaw, and whether it was not a virtual acceptance of such drafts as he might draw, within the limits and on the conditions prescribed? And *second*, whether the defendants had not complied and accepted drafts already, to the full amount authorized in said letter?

The parish judge was of opinion, the defendants were not liable as acceptors under the letter of credit, and gave judgment accordingly, from which the plaintiffs appealed.

*T. Slidell*, for the plaintiffs:

1. A promise to accept amounts to an acceptance. And although at one time doubts were raised whether this doctrine applied to bills not *in esse* at the time of the promise, yet all such doubts have been completely dissipated by a large

EASTERN DIST.
*December*, 1840.

CARROLLTON
BANK
*vs.*
TAYLEUR ET AL.

train of decisions, both in this country and by the highest tribunals of England. When one merchant makes to another such a promise as enables that party to obtain credit, by exhibiting it upon the exchange, the party promising is not permitted to shuffle off his responsibility by the disingenous plea of want of purity of contract. The promise enures to the benefit of third persons taking bills upon the faith of it, within a reasonable time after the promise is made, and such third persons, in the language of Lord Mansfield, "have nothing to do with the equitable circumstances between the drawer and acceptor." The plaintiffs refer, in support of these propositions, to the following authorities: *Pillans* vs. *Van Microp*, *Burrow's Reports*, 1663; *Johnson* vs. *Collings*, 1 *East*, 99; *Clark* vs. *Cock*, 4 *East*, 68; *Milne* vs. *Pust*, 3 *Campbell*, 393; *Mason* vs. *Hunt*, *Douglas*, 296; *M'Kim* vs. *Smith*, 1 *Hall's Law Journal*, 485; *Payson* vs. *Coolidge*, 2 *Gallison*, 235; *Banorgee* vs. *Hovey*, 5 *Massachusetts Reports*, 15; *Wilson* vs. *Clements*, 3 *Massachusetts Reports*, 1; *Parker* vs. *Grule*, 2 *Wendell*, 545; *Same case*, 5 *Wendell*, 414.

2. This doctrine is founded upon important considerations of commercial policy and mercantile convenience, and for half a century, the commercial world have confidently acted upon it. As was observed by Justice Grose, "we should be doing great mischief if we were to overturn this doctrine."

3. The defendants' counsel has attempted to restrict the doctrine to cases where the letter of credit so describes the particular bills to be drawn as to identify them. Such a position is palpably hostile to that principle of "mercantile convenience" which, as already stated, lies at the foundation of the general doctrine of the availability of a letter of credit, in favor of third persons. The idea seems to have been taken entirely from the case of *Coolidge* vs. *Payson*, when the Supreme Court of the United States, having no occasion to go beyond the case of a bill identified by the letter, limited themselves to such a case; and if, by implication, their decision can be considered as pregnant with the negative, that if not specially identified the drawer would not be bound, it must be regarded, at all events, as *obiter dictum*. In the case in

EASTERN DIST.
December, 1840.

CARROLLTON
BANK
vs.
TAYLEUR ET AL

*Wendell*, decided at a much later period, we find no identification, but rather the reverse, for the promise pointed to two bills at three and four months, yet a single bill for the whole amount, at four months, was considered as covered by the promise. It is, moreover, a principle of universal law, that the intent of the parties is the true key to the construction of every instrument, be it a sale, a bond, a will, or, as in this case, a letter of credit. This letter was couched in the most general terms. They avoided the enumeration of specific sums, to be drawn at specific dates, in favor of specific persons, because the object was to give Grimshaw a general credit up to ten thousand pounds, &c., for any business that he might see fit to engage in. It was intended for the perusal of third persons, and to *induce them to give credit to Grimshaw.* This is patent upon the face of the letter itself, and flows also irresistibly from the expressions of Grimshaw's application, to which the letter of credit was a reply.

4. The letter gave a continuing open credit. The terms of the letter, coupled especially with the application of Grimshaw, are conclusive upon this point.

5. The Carrolton Bank took the bills upon the faith of the letter of credit, which was deposited with them, and has so remained. This is undisputed, as to the bills of later date. As to the first bill, it appears it was received, together with the letter of credit, by the Exchange Committee, on the 23d April. That by a by-law of the corporation, the Exchange Committee were without power to act upon a letter of credit. That they could only be accepted by the Board of Directors. That on the 26th April, the board accepted the letter of credit, and ratified the action of the Exchange Committee. This ratification, by a retroactive effect, made the act of the Exchange Committee the act of the Board: See 2 *Strange,* 1128, where it was held as follows : If a continual claim, or an entry to avoid a fine, or an entry for condition broken, is made by a person having no present authority, the principal may bring an action upon any of these acts, and his ratification or adoption of them will supply the want of an original authority. In *Roe* vs. *Pierce,* 2 *Campbell,* 96, a verbal notice to quit,

EASTERN DIST.
*December*, 1840.

CARROLLTON
BANK
*vs.*
TAYLEUR ET AL.

by a steward of a corporation, was held ratified and binding, by the corporation's bringing a suit founded upon that notice: See, also *Goodlitle* vs. *Woodward*, 3 *B. & A.*, 689. But supposing the ratification of the board would not so retroact, yet another position will support us. If the title of the bill was divested on the 23d April, in whom did it vest? If in the bank, its accessory, the right arising from the letter of credit, vested also, for the letter accompanied the bill. But was it vested in the two directors? Still, as the letter accompanied the bill, the accessory right of acceptance vested in them also. Then, when on the 26th the board adopted this act, clearly by the principle of subrogation, they took all the rights which the directors had acquired.

6. The plaintiffs contend that the fate of every bill of Grimshaw, properly chargeable to the letter of credit, was, as regards the condition contained in the letter of credit, to be decided by the actual amount of the defendants' acceptance, as compared with the actual value on hand, at the moment of presentment for acceptance. As each bill came forward, the inquiry was, are you at this moment under acceptance by an amount exceeding by ten thousand pounds the amount of value (that is merchandise or proceeds of merchandise) now on hand? If you are not, your letter of credit entitles me to acceptance; and if you refuse, you dishonor your own promise, your implied acceptance. If you are so in advance, then you have the right to refuse acceptance of the bill I now present to you. This is the only fair and reasonable standard. It accords with the phraseology of the letter and the intent of the defendants. It is simple, unequivocal and certain.

*Benjamin*, for the defendants, contended, the plaintiffs are not a party to the letter of credit, and do not even allege an assignment of Grimshaw's rights, but merely claim, that the letter was exhibited and deposited with them by Grimshaw. Even if they were his assignees, they could not recover, for the only action that Grimshaw could maintain, would be one for damages for a breach of contract, which is not the one

now brought; and which could be victoriously defended by a plea of compensation, if on no other ground, for the evidence shows that he is indebted to them for more than ten thousand pounds.

2. The second ground of defence involves a question of commercial law of great importance, which, however, is now pretty well settled, by the decisions in England and America; and which is, " whether a general letter of credit addressed to an individual, authorizing the drawing of bills by him, up to a certain amount, but without any description by which the bills so drawn could be identified, be such an acceptance of the future bills, as to authorize suit against the signers of the letter, by third persons, purchasers of the bills; and to whom the letter was exhibited at the time of purchase?" We contend, that in order to construe a promise to accept a future bill into an actual acceptance, the bill must be *described in terms* not to be mistaken; the description must be such as to *identify* the particular bill sued on: *Chitty, on Bills*, (*Ed.* 1839,) *pages* 311-12-13; *Bayley, on Bills*, (*Ed.* 1836,) *p.* 168; 3 *Burrows*, 1663; 3 *East*, 105; 4 *Idem.*, 70; 4 *Campbell*, 393; *Payson* vs. *Coolidge*, 2 *Wheaton*, 66; 1 *Peters*, 283; 3 *Idem.*, 426; 1 *Baldwin*, 38; 2 *Wendell*, 545; 5 *Idem.*, 414.

3. The case before the court is stronger than any in the books in favor of the defendants, for the letter of credit contains a clause, that shows the signers contemplated that they were contracting with Grimshaw exclusively, as they authorize him to draw with the understanding, *i. e.*, " on the condition, that at or before the close of the season, the probable balance against Grimshaw be remitted for." The evidence shows that he is indebted for drafts drawn under the same letter, for a sum exceeding the amount authorized; and the attempt, in this suit, is to impose on the defendants a still further loss.

4. The plaintiffs are in a dilemma, from which it seems impossible they can escape. Their whole action is based on the supposition, that the letter of credit in question is equivalent to an actual acceptance of the bills afterwards to be drawn. The bills which were accepted *supra* protest, were

EASTERN DIST. drawn and presented prior to those held by the plaintiffs. If
December, 1840. they are right in their positions, the bills thus accepted *supra*
CARROLLTON protest were, by virtue of the letter, clearly accepted uncon-
BANK ditionally. The subsequent protest and acceptance *supra*
*vs.* protest, are perfectly idle ; because it is palpable that the
TAYLEUR ET AL. drawee, after an unconditional acceptance, cannot accept for
honor : See 1 *Peters*, 264, where chief justice Marshall says,
" If the drawees, refusing to honor a bill, were bound in good
faith to accept or pay as drawees, they can acquire no rights
by paying *supra* protest."

*Morphy, J.*, delivered the opinion of the court.

The defendants,residing in Liverpool,are sued for a balance
on four bills of exchange, drawn on them by James Grim-
shaw, drawn to the order of and endorsed by U. Bouligny.
The plaintiffs allege, that they were induced, shortly after the
date and before the maturity of said bills, to purchase and
negotiate them upon the faith of a certain letter of credit
given to Grimshaw by defendants, exhibited to and deposited
with them at the time of such purchase and nogotiation; that
defendants were bound, under the faith and virtue of said let-
ter of credit, to accept and pay the said bills, but that they
refused acceptance and payment of them, although they did
afterwards pay certain sums on account of the same ; that
they, (the plaintiffs,) have been obliged to pay and take up
these bills, which they had negotiated to third persons,
together with damages, interest and charges, and that by
virtue of said letter of credit, defendants have become bound
and liable unto them for the balance due on said four bills,
and for damages and interest thereon.

The defendants answer, that on the 7th December, 1838,
they did by letter addressed to James Grimshaw, give him an
open credit for ten thousand pounds sterling, available as often
as his bills drawn on said credit should be covered by satisfac-
tory remittances in bills, specie or produce, so that the defend-
ants should not at any time be brought under acceptance for
more than ten thousand pounds sterling beyond the value they

might have on hand, and with the understanding that at, or before the close of the season, the probable balance against him, should be remitted for; that they have faithfully complied with all their obligations entered into with the said Grimshaw; that at the time when plaintiffs' bills were dishonored, defendants were already under acceptance for a sum exceeding ten thousand pounds sterling beyond the value they then had on hand on account of said Grimshaw, and consequently were not bound to accept them. They conclude, by calling for strict proof that plaintiffs did take these bills on the faith of said letter of credit. Upon these pleadings and the evidence adduced under them, there was a judgment below for the defendants. Plaintiffs appealed.

The letter upon which the defendants are sought to be made liable as acceptors of the bills sued on, is in the following words, to wit:

"Liverpool, 7th December, 1838."

"James Grimshaw, Esq., New-Orleans."

"Dear Sir.—We have received your letter of the 16th of November, advising your safe arrival at New-York."

"We annul the open credit we before gave you for ten thousand pounds, which you did not think sufficiently explicit, and in lieu thereof, we now give you an open credit for ten thousand pounds sterling, *available as often as your drafts drawn on said credit shall be covered by satisfactory remittances in bills, specie or produce, so that we be not at any time brought under acceptances for more than ten thousand pounds beyond the value we have on hand on said account;* and with the understanding, that at or before the close of the season, the probable balance against you shall be remitted for. We hope this will be sufficient to enable you to do any business to this port which may be likely to turn out to your advantage."

"We are, dear Sir, yours truly,

(Signed) Charles Tayleur, Sons & Co."

It is contended, on the part of the appellants, that when one merchant makes to another such a promise to accept, as that contained in the foregoing letter, it amounts to an ac-

EASTERN DIST.
December, 1840.

CARROLLTON
BANK
vs.
TAYLEUR ET AL.

ceptance, and inures to the benefit of third persons, taking bills upon the faith of it, within a reasonable time after the promise is made. It is further contended, that although such a promise to accept be conditional, and though a third person takes the bills, subject to the condition, yet, if the condition be fulfilled, the implied acceptance is as absolute as though never coupled with a condition. In support of these positions, the counsel for the appellants has cited a number of respectable authorities, both English and American. The contract of the defendants was made in England, and the bills were to be made payable there, although drawn in Louisiana; they were drawn, so far as respects the defendants, with a view to England; for the execution of the contract it should seem, therefore, that their liability should be tested by the laws of that country, but it is a matter of no moment, whether our laws or those of Great Britain are applied, for the Law Merchant of the two countries, is not materially variant on this subject; if there be a difference, we believe that the doctrine of implied acceptances has been carried further in America. In England, it was for some time a matter of doubt, whether a promise to accept a bill not *in esse*, could be received as an acceptance; subsequent adjudications seem, however, to have done away with the old distinction between bills drawn before and bills drawn after the date of the promise to accept, but in all the adjudged cases to which we have been referred, the promise to accept contemplates a specific bill or bills, whether drawn or to be drawn, and no where do we find a general authority to draw to a certain amount without any description by which the bills drawn can be identified, construed into such an acceptance of the future bills drawn under it, as to authorize suit against the drawee by third persons. We see, on the contrary, most of the judges in England expressing the regret, that any other act than a written acceptance on the bill itself, has ever been deemed an acceptance. After many decisions in both countries on these collateral acceptances, predicated on the facts of each particular case, the rule has been laid down and settled by the Supreme Court of the United States,

A promise to accept, contemplates a specific bill or bills, whether drawn or to be drawn, and not a general authority to draw to a certain amount without any description of the bills. In the latter case, it will not be such an implied acceptance or promise to accept, as will bind the drawee.

in *Coolidge* vs. *Payson*, 2 *Wheaton* 75, it is, "that a letter written within a reasonable time, before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." But this is said by the counsel to be an *obiter dictum* of the judge, who on that occasion was the organ of the court. We believe, on the contrary, as in fact is expressed in the opinion itself, that this question being considered of much importance to merchants, it was intended to be put at rest, hence the remarkable precision with which the rule was laid down. This question received again the particular attention of the same tribunal in *Schimmelpennick et al.* vs. *Bayard et al.*, 1 *Peters*, 284; and in *Boyce & Henry* vs. *Edwards*, 4 *Peters* 118, the same rule was again laid down and sanctioned. In speaking of these collateral acceptances, as recognized by frequent decisions in England, justice Lawrence is said to have remarked, "we should be doing great mischief, if we were to overturn this doctrine." It is the opinion of this court, that the mischief would be still greater, were we to carry it to the length we are called upon to do in the present case. The injurious effects which would flow from such an indefinite extention of the doctrine, would not be counterbalanced by the pretended mercantile convenience, in which it is said to have originated. When a general authority to draw is given, without any description of the bills to be drawn, the drawee is without the means of distinguishing those which are taken on the credit of his promise from those which are not, and even when the bills have been described, there is still some danger, for the purchaser must take the risk of the bad faith of the drawer, who may have previously drawn in favor of another person. The rule then, even as laid down, is not free from objection, but such as it is, we are disposed to hold to it, strictly, the purchaser of a bill, who seeks to charge a drawee as acceptor upon a collateral or implied undertaking. 3 *Burrows*, 1663; 1 *East*, 105; 4 *Idem.*, 70; 4 *Campbell*, 393; 2 *Wendell*, 545; 5 *Idem.*, 414; 3 *Peters*,

EASTERN DIST.
*December*, 1840.

CARROLLTON
BANK
*vs.*
TAYLEUR ET AL.

426; *Chitty's Ed. of* 1839, *p.* 311–12–13; *Bayley Ed. of* 1836, *p.* 168.

If no action can be maintained on these bills, under the doctrine of implied acceptances, although carried, perhaps, beyond the proper boundary as remarked by Lord Kenyon, it is difficult to perceive on what principle of law the plaintiffs can sue for the breach of a promise not made to them. No communication is alleged to have passed between them and defendants at the time of their taking these bills. If defendants have broken their promise, they are liable in damages to Grimshaw, but clearly not to every purchaser of his bills, with or without communication of defendant's engagement or promise to him. Grimshaw, in one of his letters, states to defendants in relation to this letter of credit, " *it does not ena- ble me to sell in bank. The banks require all letters of credit on which they act, to be addressed to themselves, &c.;*" and requests the defendants to send him several credits in blank, which might be filled up in favor of particular banks; this the defend- ants refused to do. It is to be regretted that the simple and, in our opinion, only safe course alluded to by Grimshaw, is not always followed. When a letter of credit is thus ad- dressed to the person or bank who advances funds on the bills drawn under it, the latter becomes the mandatory of the signer of the letter, and has nothing to do with the equitable circumstances between the drawer and drawee. The plain- tiffs do not allege or show any assignment of Grimshaw's rights under this letter of credit, nor does any transfer of them result from the sale of these bills or the deposit of the letter; even were the plaintiffs allowed to avail themselves of the rights of the promisee, it would not assist them in any degree, for the evidence shows him to be indebted to the defendants, in a sum far exceeding the amount sued for.

The opinion just expressed on the plaintiffs' right of action, supersedes the necessity of examining the other points in this case, which have been so elaborately and ably argued before us.

It is, therefore, ordered, that the judgment of the Parish Court be affirmed, with costs.