JOHN H. A. FROST *v.* JOHN H. PEARSON and another.

THE defendants are appellants from a judgment of the Commercial Court of New Orleans, *Watts*, J., in favor of the plaintiffs for the amount of the bill sued on.

*Eustis*, for the plaintiff.

*Maybin*, for the appellants.

GARLAND, J. The plaintiff is the holder of a protested bill of exchange for $1700, drawn upon the defendants, who reside in Boston, by E. Snelling, Jr. He alleges that the defendants are bound to pay it, it having been drawn by Snelling in virtue of, and taken by him on the faith of a letter of credit given by the defendants to Snelling, authorizing him to draw bills for any amount he might choose, which they promised to accept and pay. The plaintiff claims the amount on the further ground that Snelling was the defendants' agent in New Orleans, and that the funds given for the bill went to the use of the defendants.

The defendants deny that they are liable to pay the bill. They aver that they are not bound by the letter of credit; that it did not authorize Snelling to draw on them; that although the letter was given in the year 1838, that the members of the firm of Pearson & Co. were changed in March, 1839, and that Snelling had also formed a partnership with a person named Lewis for the transaction of business in New Orleans, and that the authority was never renewed.

The testimony shows that Snelling was brought up as a clerk, in the mercantile establishment of Pearson & Co. That in the

year 1837 they sent him to the western States as their agent, to purchase produce for them ; that at the termination of their speculations in that quarter in 1838, Snelling determined to come to New Orleans, when the defendants gave him the following letter :

*Boston, Oct. 4, 1838.*

Mr. Ephraim Snelling, Jr.,

Dear Sir :—As you are about leaving this to establish yourself in New Orleans, you are hereby authorized to value on us as you may require for any operations, and your drafts will be duly honored.

We are, respectfully,<br>John H. Pearson & Co.

Snelling, with this letter, established himself in New Orleans, not having, so far as we are informed, any other capital. His being in possession of this letter was publicly known, particularly among merchants from Boston, and those engaged in business with that city. The plaintiff was informed of the existence of the letter, by a person who says that he was authorized to answer for Snelling. Pearson & Co. are merchants of known capital and established credit; and the plaintiff, knowing this, at different times, purchased bills from Snelling on them, all of which were promptly paid, until the presentment of the bill now in contest. Many other bills, drawn by Snelling and sold to other persons, were paid, until about the time when Snelling appears to have got into difficulties, when the defendants suddenly refused to honor his bills. The evidence shows that Snelling came to New Orleans at the instance of the defendants, and that they manifested great solicitude to advance his interests. They entrusted the management of all their business in this city to Snelling. Their vessels were consigned to him ; he procured or purchased cargoes for them, and drew bills to enable him to pay for them. He was known as the agent of the defendants, and credit was given him in consequence. From the general character of the authority to draw bills, it might well be supposed that they were to be drawn for the benefit of the defendants. Independent of the testimony given by the witnesses, the correspondence of the defendants

shows very clearly that Snelling was, at least, their agent, and goes very far to establish a connection in business approaching to a partnership. The letter of the defendants of the 20th of April, 1839, commenting upon the agreement made on the 4th of October, 1838, makes the authority to draw clear, and shows the relation that existed between the parties. The commissions were to be divided between Snelling and the defendants, and so were the profits of any operations made between the parties. Other letters establish the power to draw, and the obligation to pay.

It is true, that Humphreys was a partner in the house of the defendants when the letter of credit was given in October, 1838, and retired from it in March following, and that Kendall took his place. Notices of the withdrawal of Humphreys from the house, and of the introduction of Kendall into it, were published in Boston, but not in New Orleans ; and the business was continued in the same name. After this change in the firm of the defendants, and the connection between Lewis and Snelling, we find the parties still going on as before ; bills drawn and paid, cargoes purchased and shipped, and, after Lewis and Snelling had separated, the defendants continued to do business with the latter, and continued to recognize him as their agent. Kendall, the new partner in the house, was, previous to the withdrawal of Humphreys, a clerk in the employment of the defendants, and no doubt knew of the arrangements existing with Snelling ; at any rate, they were continued long after he became a partner in the house, and he is bound thereby.

The facts of this case are so different from those in the cases of The Carrollton Bank v. Tayleur et al., 16 La. 490, and Von Phul and another v. Sloan and another, ante, p. 140, more recently decided, that they are not applicable to it.

*Judgment affirmed.*