BÓYCE AND HENRY, PLAINTIFFS IN ERROR *vs.* TIMOTHY EDWARDS,
DEFENDANT IN ERROR.

Action on two bills of exchange drawn by Hutchinson, on B. and H. in favour
of E. which the drawers, B. and H. refused to accept, and with the amount·
of which bills E. sought to charge the defendants as acceptors, by virtue of an
alleged promise before the bills were drawn.

The rule on this subject is laid down with great precision by this court, in the
case of Coolidge *vs.* Payson, 2 Wheat. 75, after much consideration, and a
careful review of the authorities; that a letter written within a reasonable time
before or after the date of a bill of exchange, describing it in terms not to be
mistaken, and promising to accept it, is, if shown to the person who after-
wards takes the bill on the credit of the letter, a virtual acceptance, binding
on the person who makes the promise. [121]

Whenever the holder of a bill seeks to charge the drawee as *acceptor*, upon some
occasional or implied undertaking, he must bring himself within the spirit
of the rule laid down in Coolidge *vs.* Payson. [121]

The rule laid down in Coolidge *vs.* Payson requires the authority to be pointed
at the specific bill or bills to which it is intended to be applied, in order that the
party who takes the bill upon the credit of such authority may not be mistaken
in its application. [121]

The distinction between an action on a bill, as an accepted bill, and one founded
on a breach of promise to accept, seems not to have been attended to. But
the evidence necessary to support the one or the other, is materially different.
To maintain the former, the promise must be applied to the particular bill
alleged in the declaration to have been accepted. In the latter, the evidence
may be of a more general character; and the authority to draw may be col-
lected from circumstances, and extended to all bills coming fairly within the
scope of the promise. [122]

Courts have latterly leaned very much against extending the doctrine of implied
acceptances, so as to sustain an action upon a bill. For all practical pur-
poses in commercial transactions in bills of exchange, such collateral accep-
tances are extremely inconvenient, and injurious to the credit of bills; and this
has led judges frequently to express their dissatisfaction that the rule has been
carried so far as it has; and their regret that any other act, than a written ac-
ceptance on the bill, had ever been deemed an acceptance. [122]

As it respects the rights and the remedy of the immediate parties to the promise
to accept, and all others who may take bills upon the credit of such promise,
they are equally secure and equally attainable, by an action for the breach of
the promise to accept, as they would be by an action on the bill itself. [123]

The contract to accept the bills, if made at all, was made in Charleston, South
Carolina. The bills were drawn in Georgia, on B. and H. in Charleston, and
with a view to the state of South Carolina for the execution of the contract.
The interest is to be charged at the rate of interest in South Carolina. [123]

[Boyce and Henry vs. Edwards.]

ERROR to the circuit court of South Carolina.

An action of assumpsit was brought in the circuit court of South Carolina by Timothy Edwards, a citizen of the state of Georgia, against Boyce and Henry, merchants of Charleston, upon two bills of exchange drawn by Adam Hutchinson at Augusta, Georgia, on the plaintiffs in error, dated the 27th of February 1827, payable sixty days after sight, amounting together to four thousand four hundred and thirty-one dollars. The bills were duly protested for non-acceptance and non-payment.

The plaintiff in the circuit court gave in evidence a letter from Boyce, Johnson and Henry, dated at Charleston, March 9, 1825.

"Mr Edwards—Mr Adam Hutchinson of Augusta is authorised to draw on us for the amount of any lots of cotton he may buy and ship to us, as soon after as opportunity will offer ; such drafts will be duly honoured."

He also gave in evidence the following notice, signed by Kerr, Boyce, and George Henry, which was published in the Charleston newspaper, on the 28th of March 1825.

"The co-partnership heretofore existing under the firm of Boyce, Johnson and Henry, is this day dissolved by the death of Mr Samuel Johnson, Jun. The business will be conducted in future by the subscribers under the firm of Boyce and Henry, who improve this opportunity of returning thanks to their friends for their liberal patronage, and hope by assiduity and attention, to merit a continuance of their support."

The plaintiff also gave in evidence a letter from Boyce and Henry to Adam Hutchinson, dated September 14, 1826, which contained the ords. "But in the mean time if you can buy cotton on terms, you are at liberty to draw as before."

Also a letter from the same to the same, dated the 16th of September 1826, advising him of the sale of a large parcel of cotton, and saying, "we wrote you last mail with authority to draw on us as usual, if you could buy to make here at 8 to 9 cents."

Also another letter from the same to Adam Hutchinson

of January the 4th, 1827. " Your favour of the 1st instant is received. You have entirely mistaken us as to our losing confidence in you : our idea is this, we are unable to keep so large a sum beyond our control, as the amount which is now standing on our books. For instance, should any accident happen to you, where would be the money to pay your drafts which are now on us and are accepted ? Should you die ; the cotton or money would of course be held by whoever manages your estate. But to come to the point ; we feel every disposition to give you every facility in our power ; you are, therefore, at liberty to draw on us when you send the bill of lading. We do not put you on the footing of other customers, for we do not allow them to draw for more than three-fourths in any instance. You may draw for the amount," &c.

Also a letter of February the 17th, 1827, acknowledging the receipt of the bill of lading for one hundred and fifty-eight bales of cotton, and stating as follows : " your bills have been presented which you gave to Timothy Edwards, which we would have accepted, had we heard from you concerning the first bill," &c.

The plaintiff then gave in evidence a letter from Adam Hutchinson of February the 7th, 1827, to Boyce and Henry, saying, " the cotton by the Edgefield, you will please have reweighed and put into store, as I do not wish it sold until the draft drawn against it becomes due. I am shipping by the Commerce one hundred and nineteen bales cotton ; it cost $3,320," &c.

Also a letter of the 9th of February 1827, from Adam Hutchinson to Boyce and Henry.

" After writing you by last mail, I bought thirty-nine bales of cotton more, and shipped it per the Commerce, &c. : the thirty-nine bales cost here one thousand one hundred and eleven dollars, &c. I yesterday drew upon you two drafts for two thousand three hundred and thirty one dollars, and for two thousand one hundred dollars, at sixty days, in favour of Mr. T. Edwards, which please honour."

The defendants in the circuit court objected to the read-

ing in evidence the letters from Boyce, Johnson and Henry, to Timothy Edwards, in March 1827 ; also to the letters from Boyce and Henry ; and from Adam Hutchinson to Boyce and Henry. But the objections were overruled by the court.

The court stated to the jury, that the letter of Boyce, Johnson and Henry, of the 9th of March 1825, in connexion with other evidence in the cause, was sufficient to charge the defendants in the circuit court, as acceptors. The court relied principally on the fact, that Boyce and Henry, on the 12th of April 1825, a few days after they had announced the dissolution of the co-partnership of Boyce, Johnson and Henry, had credited themselves in the account current which accompanies the bill of exceptions, with the sum of $1,313-58 due by Adam Hutchinson to the late firm ; thus identifying the firms, and continuing the responsibility under the letter of guarantee to the plaintiff, dated 9th March, 1825. The court also relied upon the continued acceptance and payment, by the defendants, of numerous bills, between the date of that letter and 15th February 1827, previous to which day, viz. on the 12th February 1827, they refused to accept the bills in question.

The court also charged the jury, that, unless, from all the circumstances, the jury should believe that the plaintiff knew of the letter from Boyce and Henry of the 4th of January 1827, addressed to A. Hutchinson, and that he took the bills of 8th February 1827 upon the faith of that letter, it would not legally bind them to accept the said bills ; but that it was entirely a question for the jury, whether the plaintiff had dealt with Hutchinson on the faith of that letter ; and, moreover, whether he had or not, was immaterial, because the previous letter, the notice, the accounts rendered, and the numerous bills drawn and accepted, were ample authority for the plaintiff to take the bills in question. The court also instructed the jury, that the true question was, whether the plaintiff had dealt with Hutchinson on his credit, or on the credit of Boyce and Henry. That the terms of the letter of the 4th of January having been complied with, the defendants were bound, in good faith, to accept the drafts of the

8th of February ; that the money raised by the sale of the one hundred and fifty-eight bales of cotton must be regarded as the money of Edwards and not of Hutchinson ; that it was not material whether the letter was written before or after the bill was drawn; for in either case it was, according to law, an acceptance.

A verdict and judgment were entered for the plaintiff in the circuit court, allowing the plaintiff interest according to the laws of Georgia; and the defendants, having moved for a new trial which was refused, brought this writ of error.

They contended : that the charge of the court was erroneous; and that the verdict of the jury was contrary to law.

1. Because the letter of credit from Boyce, Johnson and Henry to Timothy Edwards, in favour of Adam Hutchinson, in March 1825, was inadmissible as evidence against Boyce and Henry ; and at all events it gave no authority to Hutchinson to draw on Boyce and Henry.

2. Because the other circumstances relied-upon by the court to identify the firms of Boyce, Johnson and Henry, and Boyce and Henry, so as to extend the obligations of the said letters from the former to the latter ; were wholly insufficient for that purpose, or for making the defendants liable on other grounds.

3. Because the letters of Boyce and Henry to Adam Hutchinson, and from Hutchinson to Boyce and Henry, were inadmissible as evidence in this case ; and even if they were not, they could create no right or obligation, as between Edwards and Boyce and Henry, particularly as no proof was adduced to show that these letters were known to Edwards when he took the drafts.

4. Because the accounts current between Boyce and Henry and Hutchinson, produced by the plaintiff, showed that at the time the drafts were drawn, Hutchinson was indebted to the defendants nearly $10,000, and the proceeds of the one hundred and fifty-eight bales of cotton were rightly applied to that balance.

5. Because Georgia interest ought not to have been allowed.

6. Because the charge of the judge, and the finding of the

jury, were erroneous in the foregoing particulars, and in several others.

Mr M'Duffie, for the plaintiffs in error, stated that the practice in South Carolina was to move the court for a new trial, and on its refusal to take a writ of error.

The question in this case depends upon the law of acceptance, the plaintiffs in error asserting that they were not bound to accept or pay the bills of exchange, which are the subjects of this suit.

The first point to be maintained by the plaintiffs in error is, that the letter of Boyce, Johnson and Henry ought not to have been admitted to prove a claim on the firm of Boyce and Henry, as the firms were different and distinct. The death of Johnson dissolved the partnership, and terminated their obligations. A promise to one firm cannot be transferred and made available to another. 4 Taunton, 693. There are good reasons why this responsibility should not be asserted. The death of Johnson gave a new position to the parties; and the partnership of Boyce and Henry was liable only for its own engagements. According to the principles which have been established in this court, even the firm of Boyce, Johnson and Henry would not have been bound to accept these bills. Was the stipulation in the letter to be everlasting? This court has said, that a letter of credit shall not be binding on any one, beyond a reasonable time.

The charge on the books of the plaintiffs was a mode of keeping the accounts, but this does not prove that the firms were identical. Their continued acceptances are relied upon; they do not prove the obligation to accept bills which they refused.

Is the letter of Boyce, Johnson and Henry, if it bound the new firm, available to prove a contract with Timothy Edwards, who never saw the letter? The law upon this matter is settled definitively. A verbal promise to accept a bill before it is drawn, is not binding. This is sustained by all the authorities. 1 East, 106. 4 East, 74. 4 Cowp. 393. In Coolidge vs. Payson, in this court, 2 Wheat. 66, the court

lay down the principles which regulate this subject. The bill must be taken with a knowledge of the promise to accept, and upon the credit of that promise. The plaintiff below did not know of the contract in this case, if any existed.

In England, the judges have endeavoured to limit the liability to accept bills to be drawn. Holt's Rep. 181. Chitty on Bills, 219, note. Such bills are injurious to the safety of commerce. They create a floating and an uncertain capital. Before the plaintiffs in error should have been held liable, it should have been proved that Edwards saw the letter.

As to the allowance of interest, according to the law of Georgia, the contract to accept and pay, if any was made, was entered into in Charleston. The bills, although drawn in Georgia, were to be paid in Carolina; and there the letters were written on which the plaintiff in the circuit court relied to establish the liability of the defendants. It was therefore exclusively a contract in Carolina, and the law of that state was the law of the contract as to interest.

Mr Berrien, for the defendant in error, argued; that the letter of Boyce, Johnson and Henry, of the 9th of March 1825, taken in connexion with the advertisement of the 29th of that month, and the continued course of business carried on between the parties up to 1827, when the bills in the suit were drawn; bound the plaintiffs in error to accept the bills drawn by Adam Hutchinson. The objection to the admission of the letter of the 9th of March 1825, is, that it was not the act of the parties to this suit; but this was the precise question between the plaintiff and the defendants in the circuit court. It was therefore a question of the effect of that letter on the rights of the plaintiff, and no other. It was proper to submit it to the jury, who would draw their conclusion of its operation and of its application, from all the circumstances.

Independently of that letter, the mere course of trade between the parties, from March 1825 to February 1827, created an implied obligation on the part of Boyce and Henry to accept the bills drawn by Hutchinson in the course of that trade; until notice of the revocation of his authority to draw bills.

If the letter of the 4th of January is considered as a re-

vocation of the general power to Hutchinson, still the terms of that letter seem to have been complied with, and the obligation of Boyce and Henry under that letter was complete.

The principles upon which the defendant in error rests, have been established in Coolidge *vs*. Payson, 2 Wheaton, 66. A person who takes a bill on the credit of a promise to accept it, if drawn in a reasonable time, has a right to recover; the promise a virtual acceptance. The right of Hutchinson to draw was known to Edwards.

The general notice given by Boyce and Henry, on the 28th of March 1825, that they had succeeded to the business of the former firm, was an assumption of the obligations of that firm; and in proof of this, they accepted bills drawn on the firm of Boyce, Johnson and Henry, after the advertisement. In their accounts with Hutchinson, he is charged with the balance due to Boyce, *Johnson* and Henry. Afterwards, thirty-one bills drawn by Adam Hutchinson in the same course of business were accepted and paid, amounting to sixty-seven thousand eight hundred and sixty-five dollars. These acts were a ratification on their part of the authority given on the 9th of March 1825.

As regards Edwards, Hutchinson may be considered as the agent of the plaintiffs in error, purchasing on their account, and on their guarantee. The letter of the 27th of January 1827 would then only affect the defendant, if he had notice of it; and if he had, as the terms of that letter were complied with, they were bound to accept the bills. If the terms were not conformed to, this should have been proved in the court below by the plaintiffs in error.

The letter of the 4th of January 1827, was a distinct and substantive agreement to accept on certain terms, which were complied with on the part of the drawer; and if Edwards took the bill on the faith of that letter, the plaintiffs were bound. This question was properly left to the jury by the court.

Mr Justice THOMPSON delivered the opinion of the Court.

This was an action of assumpsit, brought in the circuit court of the United States for the district of South Caro-

lina, upon two bills of exchange drawn by Adam Hutchinson, in favour of Timothy Edwards, the plaintiff in the court below, upon Boyce and Edwards the defendants, both bearing date on the 8th of February 1827; the one for two thousand one hundred dollars, and the other for two thousand three hundred and thirty-one dollars, payable sixty days after sight.

The cause was tried before the district judge; and in the course of the trial, several exceptions were taken on the part of the defendants below to the admission of evidence, and the ruling of the court upon questions of law; all which are embraced in the charge to the jury, to which a general bill of exceptions was taken; and the cause comes here upon a writ of error.

The bills of exchange were duly presented for acceptance, and on refusal were protested for non-acceptance and non-payment; but the plaintiff sought to charge the defendants as acceptors, by virtue of an alleged promise to accept before the bills were drawn. And whether such liability was established by the evidence, is the main question in the cause. The evidence principally relied upon for this purpose consisted of two letters, the first as follows : " Charleston, March 9, 1825.  Mr Edwards—Dear Sir, Mr Adam Hutchinson of Augusta is authorised to draw on us for the amount of any lots of cotton which he may buy and ship to us, as soon after as opportunity will offer; such drafts shall be duly honoured by yours, respectfully, Boyce, *Johnson* and Henry."

Johnson soon after died; and on the 28th of the same month of March, the defendants published a notice in the Charleston newspapers, announcing a dissolution of the partnership by the death of Johnson, and that the business would be conducted in future under the firm of Boyce and Henry. The other letter is from the defendants, of the date of the 4th of January 1827, addressed to Adam Hutchinson, in which they say, "you are at liberty to *draw on us when you send the bill of lading*. We do not put you on the footing of other customers, for we do not allow them to draw for more

than three-fourths in any instance. You may draw for the amount," &c.

The defendants' counsel had objected to the admission of the first letter from Boyce, *Johnson* and Henry; and contended, that this did not bind Boyce and Henry to accept bills drawn on them after the dissolution of the partnership was known, and desired the court so to instruct the jury. But the court stated to the jury, that the said letter, in connexion with the other evidence in the cause, was sufficient to charge the defendants *as acceptors.* The other evidence referred to by the court, as would appear from other parts of the charge, was the letter of the 4th of January 1827; the notice of the dissolution of the partnership; the accounts rendered by the defendants; and the numerous bills, drawn and accepted by them, all which had been given in evidence in the course of the trial.

According to the view which we take of the instruction given by the court below at the trial, that the defendants upon the evidence were liable *as acceptors,* it becomes very unimportant to decide whether the letter of Boyce, *Johnson* and Henry should have been admitted or not. For we think, in point of law, there was a misdirection in this respect; even if the letter was properly admitted. We should incline, however, to the opinion, that this letter, at the time when it was offered and objected to, and standing alone, would not be admissible evidence against the defendants. It was dated nearly two years before the bills in question were drawn, and was from a different firm. It was evidence between other and different parties. A contract alleged to have been made by Boyce and Henry, could not be supported by evidence that the contract was made by Boyce, *Johnson* and Henry. It might be admissible, connected with other evidence showing that the authority had been renewed and continued by the new firm; and in support of an action on a *promise to accept* bills drawn on the new firm. But that was not the purpose for which it was received in evidence, or the effect given to it by the court in the part of the charge now under consideration. It was declared to be sufficient, in

connexion with the other evidence, to charge the defendants *as acceptors*. And in this we think the court·erred. Had·the letter been written by the defendants themselves, it would not have been sufficient to charge them as acceptors.

The rule on this subject is laid down with.great precision by this court, in the case of Coolidge *vs.* Payson, 2 Wheat. 75, after much consideration, and a careful review of the authorities: " that a letter written within a reasonable time, before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it; is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." This case was decided in, the year 1817. The same question again came under consideration in the year 1828, in the case of Schimmelpennich, et al. *vs.* Bayard, et al. 1 Peters, 284, and received the particular attention of the court, and the same rule laid down and sanctioned; and this rule we believe to be in perfect accordance with the doctrine that prevails both in the English and American courts on this subject. At all events, we consider it no longer an open question in this court; and whenever the holder of a bill seeks to charge the drawee as *acceptor*, upon some collateral or implied undertaking, he must bring himself within the spirit of the rule laid down in Coolidge *vs.* Payson: and we think the present case is not brought within that rule.

With respect to the letter of the 9th of March 1825; in addition to the objection already mentioned, that it is not an authority to draw emanating from the drawees of these bills; it bears date nearly two years before the bills were drawn; and what is conclusive against its being considered an acceptance is, that it has no reference whatever to these particular bills, but is a general authority to draw at any time, and to any amount, upon lots of cotton shipped to them. This does not describe any particular bills in terms not to be mistaken.

The rule laid down in Coolidge *vs.* Payson requires the authority to be pointed at the specific bill or bills to which

it is intended to be applied; in order that the party who takes the bill upon the credit of such authority may not be mistaken in its application.

And this leading objection lies also against the letter of the 4th of January 1827.. It is a general authority to Hutchinson to draw, upon sending to the defendants the bills of lading for the cotton. This is a limitation upon the authority contained in the former letter, even supposing it to have been adopted by the new firm; and must be considered, pro tanto, a revocation of it. *Hutchinson is only authorised to draw, upon sending the bills of lading to the defendants.* And although it may fairly be collected from the evidence, that that was done in the present case; it does not remove the great objection, that it is a general authority, and does not point to any particular bills, and describe them in terms not to be mistaken, as required by the rule in Coolidge *vs.* Payson. The other circumstances relied on by the court to charge the defendants *as acceptors*, are still more vague and indefinite, and can have no such effect.

The court therefore erred in directing the jury, that the evidence was sufficient to charge the defendants *as acceptors*, and the judgment must be reversed.

The distinction between an action on a bill, as an accepted bill, and one founded on a breach of promise to accept, seems not to have been adverted to. But the evidence necessary to support the one or the other, is materially different. To maintain the former, as has been already shown, the promise must be applied to the particular bill alleged in the declaration to have been accepted. In the latter, the evidence may be of a more general character, and the authority to draw may be collected from circumstances, and extended to all bills coming fairly within the scope of the promise.

Courts have latterly leaned very much against extending the doctrine of implied acceptances, so as to sustain an action upon the bill. For all practical purposes, in commercial transactions in bills of exchange, such collateral acceptances are extremely inconvenient, and injurious to the credit of the bills; and this has led judges frequently to ex-

[Boyce and Henry *vs.* Edwards.]

press their dissatisfaction, that the rule had been carried as far as it has; and their regret that any other act, than a written acceptance on the bill, had ever been deemed an acceptance.

As it respects the rights and the remedy of the immediate parties to the promise to accept, and all others who may take bills upon the credit of such promise; they are equally secure, and equally attainable by an action for the breach of the promise to accept, as they could be by an action on the bill itself.

In the case now before the court, the evidence is very strong, if not conclusive, to sustain an action upon a count properly framed upon the breach of the promise to accept. The bills in question appear to have been drawn for the exact amount of the cost of the cotton shipped at the very time they were drawn. And if the bills of lading accompanied the advice of the drafts, the transaction came within the authority of the letter of the 4th of January 1827; and if satisfactorily shown that the bills were taken upon the credit of such promise, and corroborated by the other circumstances given in evidence, it will be difficult for the defendants to resist a recovery for the amount of the bills.

With respect to the question of interest, we think, that if the plaintiff shall recover at all, he will only be entitled to South Carolina interest. The contract of the defendants, if any was made upon which they are responsible, was made in South Carolina. The bills were to be paid there; and although they were drawn in Georgia, they were drawn, so far as repects the defendants, with a view to the state of South Carolina for the execution of the contract.

The judgment of the circuit court must be reversed; and the cause sent back with directions to issue a venire de novo.