[Smith v. Ledyard.]

# Smith & Ferguson v. Ledyard, Goldthwaite & Co.

*Action for Damages on Refusal to accept Bill of Exchange.*

1. *Letter of credit ; construction of, and liability of writer.* — Letters written by a mercantile house in the business of commission merchants, addressed to a cotton buyer, in these words: " Should you feel inclined to try this market, either in the way of speculation, or with a portion of your own crop, it will afford us pleasure to serve you, and your drafts will meet with due honor at our hands ;" and, " If you can ship any more, you can draw at sight ; your own cotton we are holding," — are letters of credit to the person to whom they are addressed, which being made known, though not actually shown, to a banker, who, on the faith of them, discounts the drafts of the cotton buyer on the writers, for cotton bought and shipped to them, the promise enures to the benefit of the banker, and he may sue in his own name for a refusal to accept the drafts.

2. *Dissolution of partnership ; liability of new firm on letter of credit written by old.* — When a mercantile partnership is dissolved by the withdrawal of one of its members, and the remaining partners continue the same business under a new name, receiving shipments of cotton from a cotton buyer, to whom the old firm had addressed a letter of credit, and paying his drafts against the shipments as before, the new firm thereby ratifies the letter of credit, and cannot avoid responsibility on account of the change of partners.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN ELLIOTT.

The facts of this case were thus stated in the opinion of the court by B. F. SAFFOLD, J.: " The appellants sued the appellees, to recover the amount of a bill of exchange drawn on said appellees by William Johnston, and by him indorsed to said plaintiffs. The first count in the complaint charged a breach of promise on the part of the defendants, in refusing to accept the bill. The second count charged that the bill was drawn on the defendants by Johnston, to pay for one hundred and thirty-five bales of cotton, which he had purchased on his own account, and shipped to the defendants, on the authority of letters of credit given to him by them ; that the plaintiffs advanced the money on the bill, on the faith of said letters of credit ; that the defendants refused to accept and pay the bill, when presented ; that Johnston thereupon assigned and transferred the cotton to the plaintiffs ; and that the said defendants refused to deliver it to them, but sold it for their own benefit, and that they now refuse to account to the plaintiffs for the proceeds of sale. The common money counts were also added. Issue was taken on all of the counts. The plaintiffs took a nonsuit on the trial, with a bill of exceptions, on account of the charges given by the court, and the refusal of charges asked by them.

" The facts developed by the evidence are these : On the 29th October, 1866, Tarleton, Ledyard & Co., a commission house in Mobile, wrote to Johnston, inclosing him a price-current, and saying, ' Should you feel inclined to try this

market, either in the way of speculation, or with a portion of your own crop, it will afford us pleasure to serve you, and your drafts will meet with due honor at our hands.' On the 3d January, 1867, they again wrote, ' If you can ship any more, you can draw at sight; your own cotton we are holding.' On the 1st February, 1867, Tarleton withdrew from the firm of Tarleton, Ledyard & Co., and the other members then resolved themselves into the firm of Ledyard, Goldthwaite & Co., to continue the same business, and to settle that of the late firm. A circular to this effect was sent to Johnston, who, up to this time, had only availed himself once of the privilege invited by the letter above mentioned. Afterwards, and until March 21, 1867, he purchased several lots of cotton at different times, and shipped them to the new firm, paying for them by drafts on the defendants, which were cashed by the plaintiffs; and these drafts were duly accepted, and paid, on presentation. Johnston's practice was to inquire of the plaintiffs, before buying the cotton, whether they would advance the money on drafts drawn by him on the defendants, which he said he was authorized to do. He did not exhibit his authority, but the plaintiffs believed his statement. On the 21st March, 1867, he gave them the bill of exchange in question, in consideration of the money advanced by them with which he bought one hundred and thirty-five bales of cotton, which he shipped to the defendants. On the same day, the defendants, writing from Mobile, informed Johnston, ' Under the present fluctuations in prices, we do not care to come under acceptance for the cost of shipments, and must ask a margin of at least three cents a pound.' On the next day (March 22d), they acknowledged the receipt of the one hundred and thirty-five bales, alluded to the letter written the evening before, and said, ' On receipt of the bill for one hundred and thirty-five bales, presuming you would draw as before [we] telegraphed you as follows: " Shipment per St. Charles received. Draw for $15 per bale less than cost. If drawn, make provision as above before bill appears,"' &c. On the 25th March they wrote to Johnston : ' Your thirty days' draft, 21st March, for upwards $17,000, was presented this morning for acceptance. Not having any advice from you, and being without a reply to our T. D. of the 22d on receipt of the one hundred and thirty-five bales, we declined assuming the responsibility. We will accept for $14,000 on account of this shipment, being in advance already $2,100 for charges.' On the 1st April, 1867, Johnston wrote to them, ' You will please hold, subject to the order of Messrs. Smith & Ferguson, the proceeds of sale of one hundred and thirty-five bales of cotton shipped you by Str. St. Charles, and for which I drew on you a bill at thirty days for $17,278.68,

[Smith *v.* Ledyard.]

which you refused to accept; they having paid for said one hundred and thirty-five bales cotton.' Letters were subsequently written by the defendants to Johnston, informing him that they were holding his cotton, suggesting to him to ship to Liverpool, offering to advance for him for that purpose, and advising him to make arrangements with Smith & Ferguson to assist him in doing so. Johnston had fallen much behind with the defendants, and they appropriated the proceeds of said one hundred and thirty-five bales, his last shipment to them, to the payment of his account with them; paying to the plaintiffs, on his order, the balance of several thousand dollars due to him, which was credited on said bill of exchange.

" The above being the substance of the testimony, the court held: 1st, that the letters of October 29, 1866, and January 3, 1867, were not such letters of credit as authorized the plaintiffs to sue in their own names for a breach of promise in not accepting the bill of exchange; and, 2d, that the bill being general, and drawn on no particular fund, created no lien on the one hundred and thirty-five bales of cotton in favor of the plaintiffs, superior to the defendants' right to appropriate the proceeds of the sale of the cotton to whatever balance was due to them by Johnston. The charges of the court, in which these principles are stated, are now assigned as error."

L. GIBBONS & J. L. SMITH, for appellants.

E. S. DARGAN & JNO. T. TAYLOR, *contra.*

B. F. SAFFOLD, J. — The Revised Code provides, that " No person within this State must be charged as the acceptor of a bill of exchange, unless his acceptance is in writing, signed by himself or agent " (§ 1840); and that an unconditional promise in writing, to accept a bill before it is drawn, amounts to an actual acceptance. § 1841. These sections " must not be construed to impair the right of any person to whom a promise to accept a bill has been made, and who, on the faith of such promise, has negotiated the bill, to recover damages of the person making such promise, on his refusal to accept such bill." § 1844.

The letter of Tarleton, Ledyard & Co., dated October 29, 1866, was a solicitation of business for their own advantage. It was made in view of a well known usage of trade, that a buyer of cotton would pay his vendors out of the proceeds of a draft, or bill of exchange, drawn on those to whom he consigned it, which he sold to some banker. Without a previous agreement, the drawees would not accept the bill, unless they chose to do so after receiving the cotton. Therefore, such an

agreement is usually made. Their letter of January 3, 1867, was a renewed solicitation. These letters contain an express and unqualified promise to Johnston, to accept his bills for the purchase of *any* cotton shipped to them. He could, unquestionably, sue them for damages, on their refusal to accept such bills, negotiated by him on the faith of the promise. It was in the contemplation of these parties, that some other person was to become interested in the bills, because without a negotiation with some other they would be of no use. Whoever gave a proper consideration for them, on the faith of the promise, necessarily became a participant in the benefits of the promise equally with Johnston. A written promise, made to one person, may enure as a promise in favor of another person, who gives credit on the footing of that promise, where the terms of the letter are such as prove that it was intended to be shown, and to produce that very credit. *Adams* v. *Jones*, 12 Peters, 207, 213 ; *Carnegie* v. *Morrison*, 2 Met. R. 381, 395.

In *Laurason* v. *Mason* (3 Cranch, 492), the promise was contained in a note, as follows : " We will become your security for one hundred and thirty barrels of corn, payable in twelve months." Judge Marshall said, " The note was certainly intended to give a credit to the person addressed. The defendants are bound by every principle of moral rectitude and good faith to fulfil those expectations which they thus raised, and which induced the plaintiff to part with his property. The evidence was clear that the credit was given upon the faith of the letter." To the same effect are *Boyce* v. *Edwards*, 4 Peters, 121 ; Story on Bills of Exch. § 462, and notes 1 and 2. The case of *Blakeston* v. *Dudley* (5 Duer (N. Y.) R. 373) is not good authority, because it confines the benefit of the promise to the person to whom it was directly made, or who *negotiated* the bill, meaning thereby one who passed it merely. He who receives the bill for value, negotiates it as well as he from whom it is received. It requires at least two to make a negotiation. Webst. Dict. There is no reason why the plaintiffs should have actually seen the letters of credit. The possession of them by Johnston, and the credit given on their faith, make out the liability. The sight of them would be only additional proof that the credit was given on the faith of them.

2. The defendants were the same persons who, with Tarleton, composed the firm of Tarleton, Ledyard & Co. They continued the same business, were cognizant of the arrangement with Johnston, and accepted its benefits. They encouraged the plaintiffs to discount the bills by accepting and paying them. They expressly authorized Johnston, by the letter of

[Belshaw *v.* Moses.]

March 21, 1867, to draw on them at a greater margin than he had previously been doing. The next day (March 22) they promised him to accept the bill in question, with a larger margin. These acts show both their construction of the letters of credit and their ratification of them. Whose fault was it that loss was sustained in these transactions? It was caused by the decline in the price of cotton. No bad faith is alleged against Johnston or the plaintiffs. The defendants never did revoke the authority to draw on them, except in respect to the greater margin required on the very day, and after the bill in controversy was drawn and delivered, and by the refusal to accept the bill. Even after their refusal to accept it absolutely, they agreed to accept it for a less amount. If they could have applied their terms of March 21, 1867, to this bill, the transactions between the parties would not have ceased when they did.

The charges given were not in conformity with the views herein expressed. It is unnecessary to consider those refused. The judgment is reversed, and the cause remanded.