THE EVANSVILLE NATIONAL BANK, Appellant *v.* ADOLPH KAUFMANN and FERDINAND S. M. BLUN, Respondents.

*Letter guaranteeing payment of drafts — who may take advantage of it.*

The firm of Bingham Bros., distillers at Evansville, Indiana, were accustomed, to the defendants' knowledge, to consign their products to one Fiegelstoch in New York and draw upon him as occasion required. December 29, 1874, the defendants wrote from New York to Bingham Bros. a letter saying "any drafts that you may draw on Mr. A. Fiegelstoch of our city we guaranty to be paid at maturity." Thereafter Bingham Bros. drew a draft on Fiegelstoch, and presented the same, together with the defendants' letter, to the plaintiff, which discounted the draft, and forwarded it to New York, where it was dishonored. In an action brought against the defendants:

*Held,* that the letter operated as a special promise to Bingham Bros. to pay the amount of any drafts drawn by them upon Fiegelstoch, which he refused to pay.

That the discounting of the draft by the plaintiff, upon the delivery to it of the letter, rendered the plaintiff an equitable assignee of the promise contained in the letter, and that having an interest in the subject-matter the plaintiff could maintain the action to the same extent as its assignors could have done.

When a letter is to be considered as a general agreement to guaranty all drafts to be drawn against a certain person, enforceable by the holders thereof, discussed and the authorities collated by Davis, P. J.

Appeal from a judgment in favor of the defendants. entered on the report of a referee.

*William H. Scott* and *Asa Eglehart,* for the appellant.

*C. E. Souther,* for the respondents.

Davis, P. J. :

This action was brought to recover the amount of two drafts, drawn by Bingham Bros., of Evansville, Indiana, on A. Fiegelstoch, of the city of New York, and bought or discounted by plaintiff at Evansville, and forwarded to New York for acceptance and payment by the drawee, by whom they were dishonored.

Bingham & Bros. were distillers at Evansville, and used and needed large credits in their business. Fiegelstoch was a consignee

of their products, upon whom they were accustomed to and did draw as occasion required.

The defendants, with knowledge of these facts, made their letter of credit in the following words and figures:

> NEW YORK, *December* 29, 1874.
>
> Messrs. BINGHAM BROS., *Evansville, Indiana:*
>
> DEAR SIRS. — Any drafts that you may draw on Mr. A. Fiegelstoch, of our city, we guaranty to be paid at maturity.
>
> Truly yours,
>
> KAUFMAN & BLUN.

On the 5th and 10th of May, 1875, Bingham & Bros. drew on Fiegelstoch two drafts of $5,000 and $2,500, at sixty and fifteen days respectively, and presented the same, with the said letter of credit to plaintiff, by whom the drafts were discounted in due course of business, relying upon the guaranty of defendants, which was delivered to and remained in the possession of plaintiff.

The referee disposed of the case altogether upon the question of the construction and effect of the letter of credit, holding that these were controlled by the case of *Birckhead* v. *Brown* (5 Hill, 634), which was affirmed by the Court of Errors; S. C. (2 Denio, 375), by an equally divided vote and without any opinion. It seems quite apparent, from the opinions given by the learned referee, both upon the motion to dismiss the complaint, and upon the final decision, that if he had not felt himself bound by the authority above mentioned he would have rendered judgment for the plaintiff.

To my mind it seems to be extremely clear that the object and purpose of the guaranty or letter of credit in this case was not to secure Bingham Bros. against loss of money or property they might have in the hands of Fiegelstoch and draw against at any time or to indemnify *them* in their dealings with Fiegelstoch. That object could and would, doubtless, have been expressed in a very different form if the defendants had entertained such a purpose only. The intention was, as it seems to me manifest by the language of the instrument, and even more clearly in the light of the surrounding circumstances, to give a general credit *to the drafts* of Bingham Bros. that might be drawn on the person named, so that they could and would be bought or discounted by the plaintiff or any other

bank or party to whom they might be presented, to enable the drawers to raise the money as the needs and usages of their business should require. The words of the instrument are: " Any drafts that you may draw on Mr. A. Fiegelstoch, of our city, we guaranty to be paid at maturity." To be paid to whom ? Certainly to the holders of such drafts who shall present them for such payment. To be paid when ? At maturity; that is, when due according to the usage established by the commercial law. This is plainly a guaranty of payment *by the drawee* when due to the holder who presents the draft, and not a promise of indemnity of the drawer in case the drawee fails to pay.

The " drafts " contemplated are or may be negotiable paper under the law merchant, passing from hand to hand by delivery or indorsement, and with reference to that paper, with all its well known incidents, the defendants promise that *it* shall be paid at maturity *if* drawn by the drawers named and upon the specified drawee.

It is entirely sound in law, I think, to read this instrument as though its words were :

" Any drafts that Bingham Brothers (of Evansville, Indiana) may draw on Mr. Fiegelstoch, of New York, we guaranty to be paid to (the holder and owner) on due presentation at maturity."

In this case the letter of credit was presented to the plaintiff and delivered to it with the drafts when discounted, and it appears affirmatively in the case that the plaintiff acted upon the credit of the letter in purchasing the drafts of Bingham Brothers and paying therefor. These facts attach the guaranty to those specific drafts, and reduce the general promise, *pro hac vice*, to one of personal undertaking with the plaintiff in respect of their payment if duly presented. These views accord with numerous authorities. (*Russell* v. *Wiggin*, 2 Story, 213 ; *Carnegie* v. *Morrison*, 2 Met., 381 ; *Boyce* v. *Edwards*, 4 Pet., 111 ; Story on Bills, §§ 545, 546, and cases there cited.) *Monroe* v. *Pilkington* (14 How. Pr., 250), in which the question was elaborately examined by Justice DAVIES. And they are consistent with the *Union Bank* v. *Coster's Executors* (3 N. Y., 204); *Benedict* v. *Sherill* (Lalor's Sup., 219); *Lawrason* v. *Mason* (3 Cranch, 492); *Mason* v. *Hunt* (1 Doug., 297). But these authorities are, as the learned referee shows in his opinion, not in accord with the more analogous case of *Birckhead* v. *Brown*

(5 Hill, 634; S. C., 2 Denio, 375), and not wholly consistent with the views expressed by DWIGHT, Com., in *Barns* v. *Barrow* (61 N. Y., 41), in which the question was not very directly involved. It must, under this condition of the authorities, remain for the Court of Appeals definitely to settle the rule of this state in cases like the present. We feel ourselves not at liberty to disregard the decision of the Supreme Court in *Birckhead* v. *Brown* (*supra*), although the decision of this court was barely affirmed by a divided court, in the court of last resort.

But we think this case may be determined upon another ground. In the view insisted upon by the respondents, the letter of credit in question in this case was a special letter or promise to Bingham Brothers. In that view it was a valid contract, for it would be so read by the law as to supply the consideration, so far as necessary, under the former statute of frauds. "*If you will draw on him*, I will guaranty that any drafts you may draw on Mr. A. Fiegelstoch of our city will be paid at maturity." Or it would be regarded as an original promise under the rule of *Gates* v. *McKee* (13 N. Y., 235), and the defendants held to the established construction of such instruments. (*Douglass* v. *Reynolds*, 7 Pet., 113; *Rochester City Bank* v. *Elwood*, 21 N. Y., 90; *Rindge* v. *Judson*, 24 id., 64; *Lawrence* v. *McCalmont*, 2 How. [U. S.], 426.)

The drafts drawn by Bingham Bros. are within the contract of defendants. That contract guaranteed to Bingham Bros. that they should be paid at maturity. They were not paid, and so, for the breach of the guaranty, Bingham Bros., if they had remained owners of or had taken up the drafts on their being dishonored, would have had a right of action against the defendants. If that right were not assignable at common law it was so in equity, and an assignment would have given plaintiff a right to bring an action for its own benefit in the name of Bingham Bros. The law of assignments is now changed and the real party in interest, under our Code, may bring the action in his own name. The sale of the drafts to plaintiff by Bingham Bros. and payment of their value gave complete title of them to plaintiff. The delivery of the contract of defendants, guaranteeing the payment of the drafts, was an equitable assignment of that instrument to the plaintiff, which operated when a right of action accrued to Bingham Bros. for breach of the promise

that the drawee would pay at maturity, to transfer such right of action to plaintiff.   There can be no question but that after a right of action had accrued to Bingham Bros. for non-payment of the drafts, that firm could have assigned that cause of action so as to enable any assignee to recover upon it in his own name in this State.   In legal contemplation, such an assignment has been made. The letter of credit was delivered to plaintiff by Bingham Bros., upon sufficient consideration, and with intent to transfer its obligation, whatever it might have been or might become, for the purpose of protecting and securing the plaintiff.

A naked delivery even of a sealed instrument upon sufficient consideration and with intent to transfer an interest in it is a valid assignment of title ; and that the delivery in this case was antecedent to the time when the liability of defendants became fixed by the non-payment of the draft can have no legal significance.   The plaintiff was entitled to retain the letter on such delivery, even against Bingham & Bros., who could not rightfully withdraw it against the plaintiff's consent, and the title became perfect as to both the inchoate and the perfected right of action, whenever the defendant's promise was broken by the non-payment of the drawee.   If the assignment be regarded merely as collateral to the drafts, nevertheless the plaintiffs took title sufficient to enable them to enforce the contract so far as necessary to protect their drafts.   An instrument thus assigned may be sued by the holder who if not absolute owner, is a trustee with a beneficial interest.   Our conclusion is, therefore, that the question so ably discussed by the learned referee, as to the true nature of the contract, is not material to the final disposition of this case.

The plaintiff, as an equitable assignee of the letter of credit, with an interest in the subject-matter, can maintain the action to the same extent that his assignors could have done, and that, for anything that now appears in the case, would be for the full amount of the drafts.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event