HENRIETTA NATIONAL BANK v. STATE NATIONAL BANK.

No. 7033.

1. **Promise to Accept Check—Description.**—A check for $1800 drawn by E. F. and W. S. Ikard on the Henrietta National Bank was offered to the State National Bank by an indorsee. The cashier telegraphed to the Henrietta National Bank as follows: "Will you pay E. F. and W. S. Ikard's check for $1800 on presentation?" The cashier replied on the same day by telegram: "Yes, will pay the Ikard check." Upon this

the check was discounted and at once mailed to the drawee. Payment was refused. *Held*, that the description given in the telegram, with the reply, being acted upon, was sufficient in a suit by the State National Bank to bind the Henrietta National Bank in an action for a failure or refusal to pay the check.

2.   **Same.** — It would seem that giving the amount and character of the bill ought to be sufficient when acted upon, according to the most rigid rule.

3.   **Promise to Accept — Acceptance.**—A practical difference between an action upon an acceptance and one upon a promise to accept is that the former may be brought by the holder of the bill, while the latter suit can only be maintained by the party to whom the promise is made.

4.   **Accidental Erasure.** — The check sued on was drawn for eighteen hundred dollars.   A line drawn with a pen crossed the upper part of the word *hundred*.   In the margin were the figures "$1800.00." It was proved that it was the intention to draw for eighteen hundred dollars.   *Held*, that the accidental erasure, if it was an erasure, did not excuse nonpayment by the drawee.

5.   **Same — Inquiry.** — While a careful banker might not receive a bill with such defects, still the drawee having agreed to pay could not take advantage from the defect. Besides, an inquiry into the facts would have developed that the bill was drawn for the amount claimed.

APPEAL from Clay.   Tried below before Hon. P. M. Stine.
The opinion states the case.

*A. K. Swan*, for appellant.—1.   An acceptance of a particular bill not exhibited at the time must, in order to support an action for nonpayment, describe the particular bill with sufficient certainty to identify it by comparison with the acceptance.   Coolidge v. Payson, 2 Wheat., 66; Schimmelpennich v. Bayard, 1 Pet., 284; Bryce v. Edwards, 4 Pet., 111; 14 Fed. Rep., 889; Morse on Banking, 317, 318; 1 Dan. Neg. Inst., sec. 560; 3 Meyer's Fed. Dec., 438.

2.   The certification of a check operates to transfer the credit from the drawer to the holder, and whatever transaction does not authorize the banker to make such transfer does not amount to a certification.

3.   The duty of a cashier as to checks is to pay them in the order presented so long as the drawer is in funds, and he has no right to reserve a part of the deposit to meet a check not yet presented.   2 Dan. Neg. Inst., 1601, 1603, 1604; Morse on Banking, 310, 311, 258–260, 265, 266, 635; Bank v. Leach, 11 Am. Rep., 708; Bank v. Bank, 10 Wall., 648.

4.   The court erred in admitting in evidence over defendant's objections and thereafter considering as evidence the check relied upon by plaintiff and offered in evidence; for the reasons that same was not a check for $1800 as alleged by plaintiff, and it had not been shown that defendant had ever accepted said check and it was never presented to defendant for payment.   1 Dan. Neg. Inst., 554–556; Kennedy v. Giddes, 8 Porter (Ala.), 268; 2 Dan. Neg. Inst., 1599; Morse on Banking, 320.

*Hunter, Stewart & Dunklin,* for appellee.—The undisputed evidence shows that the plaintiff asked the defendant bank by telegraph if it "would pay E. F. and W. S. Ikard's check for $1800 on presentation." The prompt answer was, "Yes; will pay the Ikard check," signed by the cashier of the defendant bank.

Upon the faith of this answer the plaintiff paid $1800 for the check, less the usual bank discount, and mailed it at once to the cashier of defendant bank with orders to pay same and forward money by express. E. F. and W. S. Ikard at that time had between $2500 and $3000 to their credit in said bank unappropriated, and no other check was ever drawn against it, so that at the time the bank went into the hands of the receiver the same amount was still there to their credit, unappropriated. If these facts do not clearly estop the defendant from denying its liability, then we confess that we do not understand the law of estoppel.

We maintain that under these circumstances the bank would be liable upon the principles of estoppel, although E. F. and W. S. Ikard may not have had a dollar on deposit to their credit, but the funds being there and unappropriated, the drawing and delivery of the check was, as to E. F. and W. S. Ikard, an equitable transfer of that amount to the holder of the check, and the cashier of the defendant having telegraphed the plaintiff that he would pay the check upon presentation, the fund was, in contemplation of law, instantly transferred from E. F. and W. S. Ikard to the holder of that check. Nelson v. Bank, 48 Ill., 36; Pope v. Beck, 59 Barb., 266.

The check was actually presented to the defendant bank for payment before the bank was closed by order of the directors, and during business hours, and ought then to have been paid. 2 Dan. Neg. Inst., secs. 1599, 1599a, 1601, 1601a, 1602–1604, and note 1, 1606a, 1610, 1640, 1641, 1643; 1 Dan. Neg. Inst., secs. 18, 23a; 2 Morse on Banking, 307, 308; Ball on Nat. Banks, sec. 1, p. 66; Bank v. Beck, 80 Ill., 212.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by the appellee to recover of the Henrietta National Bank and Frank Brown, as its receiver, the amount of a check drawn upon it by E. F. and W. S. Ikard.

On the 22d of July, 1887, E. F. and W. S. Ikard drew a check on the defendant bank in favor of one T. F. West for $1800. West indorsed and delivered it to one Atkinson, who on the next day presented it to the cashier of the plaintiff bank at Fort Worth with the request that he cash it. The cashier immediately telegraphed the defendant bank as follows: "Will you pay E. F. and W. S. Ikard's check for $1800 on presentation?" The cashier of the defendant bank on the same day replied by telegram: "Yes; will pay the Ikard check." Upon the receipt of this telegram the plaintiff discounted the paper and the

holder transferred it to the bank by indorsement and delivery. The check was immediately sent by mail to the defendant bank with a request to remit the amount to the plaintiff. The letter reached Henrietta on Sunday, and on Monday before banking hours the directors of the defendant bank determined to suspend payment, and thereafter its doors were not opened for regular business.

The court having given judgment for the plaintiff for the full amount of the check and interest, and the defendants having appealed, they now complain in effect that the correspondence by telegraph between the two banks did not sufficiently describe the check so as to make the promise of the defendant bank an acceptance. The authority mainly relied upon by appellants' counsel in support of their contention is the case of Coolidge v. Payson, 2 Wheat., 66. In that case Chief Justice Marshall says: "Upon a review of the cases which are reported this court is of opinion that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken and promising to accept it, is, if shown to the person who afterward takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise." The doctrine was reaffirmed in the same court in the cases of Schimmelpennich v. Bayard, 1 Peters, 284, and Bryce v. Edwards, 4 Peters, 111, and has been frequently followed in other courts. Whether according to the rules laid down the correspondence should show any more than the amount and character of the bill as to the time of payment we need not here inquire, though it would seem that such a description ought to be sufficient according to the most rigid rule recognized by any court.

The rule, however, applies only to a case in which it is sought to charge the defendant as the acceptor of the bill. Cases may arise in which the party who has promised to accept may be held liable upon the promise, although such promise may not be deemed equivalent to a formal acceptance. A practical difference between an action upon an acceptance and one upon a promise to accept is that the former may be brought by the holder of the bill, while the latter suit can only be maintained by the party to whom the promise is made. In this case the promise to pay the bill was made directly to the plaintiff, and it was upon the faith of that promise that the check was discounted. The suit is not brought upon an alleged acceptance. The petition states the facts in detail and seeks a recovery for the breach of the promise to pay the check. In Bryce v. Edwards, *supra*, the Supreme Court of the United States says: "The distinction between an action on a bill as an accepted bill and one founded on a breach of promise to accept seems not to have been adverted to. But the evidence to support the one or the other is materially different. To maintain the former, as has already been shown, the promise must be applied to the particular bill alleged in the declaration to have been accepted. In the latter the

evidence may be of a more general character and the authority to draw may be collected from circumstances and extended to all bills coming fairly within the scope of the promise." It is clear that the promise in the case before us was sufficiently definite to support an action for a failure or refusal to pay the check described in the petition, if not sufficiently specific to authorize its being treated as an acceptance.

The check offered in evidence contained the character and figures "$1800.00," but in the body a line appeared to have been drawn through the word "hundred." If the word was intended to be erased it was a check for $18 only; if not it was a check for $1800. The line appears to have been drawn along the top of the word, rather than through it, and it is not at all clear that even without explanation it should be held to be an erasure. The member of the firm who drew the check testified that it was intended to be a check for $1800, and that he thought the line was upon the blank when the check was written. The circumstances attending the whole transaction leave no doubt that the purpose was to draw a check for the amount claimed by the plaintiff, and that the line was either upon the paper when the check was drawn and was not discovered, or that it was subsequently placed there by some accident. That it was competent to prove that a mark of this character was not intended as an erasure, especially when the figures in the margin tend to show the same fact, we have no doubt. Sharswood's Starkie on Ev., 500. The defendants introduced testimony tending to show that a prudent banker would not have paid the check, at least without inquiry as to the intention of the drawers in executing it. This may be true, but so far as this case is concerned it is a fact of no importance. It was nevertheless the duty of the defendant bank to pay the check. An inquiry would have shown beyond doubt that it was a check for $1800, and though the apparent erasure may have justified a delay of a reasonable time to make inquiry, it did not justify a final refusal to pay.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

· Delivered May 1, 1891. ·