Sewall, J.,
delivered the opinion of the Court.
The question of the competency of Lemuel Weeks as a witness, and, as it has been argued at the bar, the competency of his testimony, as used in this cause, may be considered as reserved at the trial; the verdict found for the defendants depending very much, if not altogether, upon the admissibility and effect of this evidence.
The bill of exchange, on which this action is brought, was drawn by Lemuel Weeks &/■ Son, one of whom is the Mr. Weeks offered as a witness at the trial. It is addressed to the defendants, and made payable to the plaintiff, for value received of him. This bill, produced at the trial by the plaintiff, together with a letter addressed, in behalf of the defendants, by one of their firm, to the drawers of the bill, constitutes the plaintiff’s case; the letter being the only part of the evidence which has any tendency to charge the defendants, or render them liable in this action, brought against them as acceptors of the bill of exchange.
The letter, which is dated November 4, 1807, contains a positive engagement by the writer, Samuel Lenox, to guaranty the acceptance of bills to be drawn in the manner therein specified; and among the rest mentioned is *one set foi *59 375l., and one set for 300l. sterling, which, it is understood, as the letter expresses it, Lemuel Weeks &f Son are to draw in thirty days after the date of the letter; and the license or credit given them is, that all the sums specified, amounting together to 4050l. sterling money, may be drawn for, payable in London or Liverpool, as they may think proper; and the writer engages that they shall meet due honor by Logan, Lenox, & Co., for whom he professes to act.
If, as one of the company, or in any other manner, Samuel Lenox had authority thus to engage Logan, Lenoa, & Co., in a contract of this import, — and this seems to have been admitted, or, at least, not to have been questioned at the trial, — the constructive effect of this writing may be, to consider this collateral engagement, preceding the existence of the bills, as an acceptance of them, if drawn pursuant to the license and credit given, and if negotiated upon the faith of that engagement. For certainly the letter would not be allowed to have any operation respecting bills of exchange negotiated, where this particular license and credit had not been communicated. But, where communicated,it may be considered as a case within the principles of the decision in the time of Lord Mansfield, in Pillans & Al. vs. Van Mierop & Al., cited in the argument, and of other decisions which may be cited, where a collateral promise or guaranty has been enforced according to that legal operation and import which best answers the intentions of the parties. (3) And thus a promise to accept is the same as an actual acceptance, where the promise is made to the payee of the bill; and, to apply the principle in this case, we must add, or made to the drawer of the bill, if communicated to the payee, and by the circumstances proved, he may be considered as advancing his money upon it, relying on that promise, (a)
*60 So far as the case before us depends on the bill of exchange and the letter, the possession of the writings, they being both in the hands of the payee of the bill, is evidence to the effect supposed to be requisite. The presumption from this circumstance unexplained is strong, and may be conclusive, that the payee became entitled to the bill, and paid the value of it, trusting to the letter and the credit thereby engaged to the drawers, the bills being conformable to the terms of the engagement stated m the letter.
An acceptance entered upon a bill generally, or the blank endorsement of the name of the drawee, holds him absolutely as the acceptor; and no conditions or stipulations, which he may have connected with his acceptance, unless expressed upon the bill, will avail him against an endorsee or payee, to whom the bill has been negotiated, and who had received the bill as accepted, without notice of the conditions. And in deciding this cause, we may suppose the same construction and effect is to be given to a promise to accept; and if such promise be stated in a writing absolutely, the party relying upon it is not to be answered by conditions and preliminaries, understood only between the party who has engaged a credit to the drawer, and the drawer himself. There is a breach of faith, a fraud on the part of the drawer, who negotiates as an absolute acceptance what he knows was conditional; or who receives the value of a bill of exchange, drawn upon the faith of a letter of credit expressed absolutely, which he communicates to the payee, concealing, at the same time, the preliminaries upon which his credit with the writer of the letter was made to depend in the agreement between them. But the payee is, in the case supposed, as much defrauded as the supposed acceptor; and the fraud practised by the drawer upon the payee, is a direct consequence of the imprudent confidence placed in him, by a written engagemen of credit, expressed without limitation or condition. He comes, tnerefore, within the common principle, by which two sufferers by the fraud of another are sometimes distinguished. He who has trusted the *61 fraudulent party, and thereby enabled him to deceive the other, is to abide the * consequences of the fraud, however innocent in other respects. (4)
By this course of reasoning, we might be led to a conclusion favorable to the plaintiff, understanding him to be the holder of the bill of exchange and the letter of credit, without notice of any preliminary stipulations; and that he gave the value of the bill, relying upon the promise of acceptance, as it seems to be expressed in the letter. But connecting the testimony of Lemuel Weeks, the drawer of the bill, as to his further communication to the payee, given with the letter, a very different case is presented, as to the reasonable expectations and reliance of the payee of the bill.
An acceptance, even when absolute, as it is written on a bill of exchange, is sometimes restrained in its operation, and rendered conditional, by the words or conduct of the acceptor; and he is entitled to the benefit of conditions and restrictions, expressed in words only, or arising from circumstances connected with the acceptance, against him who is the immediate party to the acceptance, or any holder of the bill who received it with notice of the restrained acceptance, or of the words or circumstances connected with the acceptance. (5)
As there is an extraordinary latitude in the evidence admitted to prove an acceptance, as this is not required to be in writing, and is provable by evidence of words, and even of actions, so connected writings, words, and circumstances, are admitted to explain and control the evidence, from which an absolute acceptance is inferred; so far, at least, as these were known or notified to the holder of the bill. (6) A letter of credit, or a promise to accept, addressed to the drawer of the bill, seems entitled to, at least, an equal latitude of interpretation, when the benefit of the contract between the original parties is claimed by a third person, who has become a voluntary party confiding in the communication he has of it from the drawer of the bill. (b)
And it seems difficult to imagine any possible objection, that can avail against the competency of evidence to prove * the statement of the drawer, when he communicated his letter of credit. In this stage of the transaction the payee relied upon the drawer, and certainly did not receive the letter communicated by him, as a stipulation of credit more extensive than the drawer himself pretended to construe or understand it. *62 The drawer undertakes to transfer the contract made with him by the drawee; and is supposed to receive the value of it from the payee of the bill of exchange. The transfer is made, not by the delivery of the bill itself, — for that is no evidence against the drawee, — but by communicating to the payee a letter of credit, which the drawer holds, addressed to him by the drawee. The words accompanying the delivery of this letter, the explanation given of it by the drawer, the restrictions to which it is subject by other agreements, whether written or verbal, or to which the drawer states it to be subject, are certainly competent evidence, when the question is, whether this letter is, as to the bill of exchange with which it was delivered, an acceptance of the bill to bind the drawee.
Here, in some sort, it may be said the drawer accepts the bill for the drawee; that is, by an authority from him proves his acceptance of it. But if the drawee might make a paroi acceptance, or accept absolutely upon the bill, restricting his acceptance by a ver bal explanation, — this also may be done, and, where the truth of the case requires, ought in honor and justice to be done, by his special agent.
And, upon the whole, we concur in opinion that the delivery of the letter was subject to an explanation by paroi testimony. The holder of the bill possesses with it a letter, which is evidence of an acceptance or a credit to the drawer, until this evidence is controlled by the circumstances communicated to the payee of the bill, the plaintiff in this action, and the manner in which he became possessed of a letter and promise not addressed to him, is made to appear. Thus controlled, there is no evidence of an absolute, *but only of a conditional and restricted promise to accept, which, under the circumstances proved, did not amount to an acceptance.
As to the exception against the admissibility of the drawer as a witness, it has been placed upon no ground of interest in the suit, or even in the question, and the case is remote from the objection derived from principles of policy and good faith, which have been thought essential to the negotiability of paper credit. A letter of credit is not negotiable paper. A bill of exchange, negotiated upon the faith of a letter of credit addressed to the drawer, is, at the commencement of it at least, a negotiation upon his credit altogether, as to the state of affairs between him and the drawee. All this is personal, — a confidence not transferable or negotiable, — and the drawer stands indifferent between the parties, in explaining the terms upon which the bill was negotiated by the aid of the letter 01 credit
Per Curiam.

Let judgment be entered on the verdict.

 1 Strange, 648. — Molloy, lib. 2, c. 10, § 20.— Chitty on Bills, 139, Amer. edit. —Cowp. 573. — 1 East. Rep. 105.

 [Chitty says a promise to accept a non-existing bill, is not an acceptance, although the party may be sued specially for the breach of his engagement, (pp. 177—168,) and Bayley says it may be doubted whether, in any case, a promise to accept a non-existing bill would now be considered as an acceptance of the bill when drawn (c. 6, § 1, p. 145.) And see Laing vs. Barclay, 1 Barn. & Cres. 398.— 2 Dow. Ry. 530. — Smith vs. Brown, 2 Marsh. 41. — Miln vs. Prest. 4 Camp. 393 — 1 Holt, 181. — Johnson vs. Collins, 1 East) 103. — But see Cooledge vs. Payson, 2 Wheat. 66. — 2 Gal. 233. — Wilson vs. Clements, 3 Mass. Rep. 1. — Banorgee vs. Hovey 5 Mass. Rep. 29. — Mayhew vs. Prince, 11 Mass. Rep. 54. — Goodrich vs. Goodwin, 15 Johns. Rep. 6. — M’Evers vs. Mason, 10 Johns. Rep. 215. — Wildes vs. Savage, 2 Story, Rep. 22. — Carnagie vs. Morrison, 2 Metc. 381. —Schimmilpennick vs. Bayard, 1 Peters, 264. — Boyce vs. Edwards, 4 Peters, 121. — Williams vs. Winans, 2 Greenl. 339. — Mr. J ustice Story, referring to the decision of the Supreme Court in Cooledge vs. Payson, says, “ Upon the footing of the cases before Lord Mansfield, it was then held that a letter written within a reasonable time, before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person, who after-wards takes the bill upon the credit of the letter, a virtual acceptance, binding the person who makes the promise. To this doctrine, thus limited, the Supreme Court have
*60 ever since steadily adhered, whenever the question has (as it has on several occasions) come before it. But, on the other hand, the Court has shown a strong disinclination in any respect to enlarge the doctrine óf a virtual acceptance of non-existing bills. It is, perhaps, to be lamented that the doctrine of such virtual acceptances ever was established ; and if the question had been entirely new, I am well satisfied that it would not have been recognized as fit to be promulgated by that Court, it being at once unsound in policy and full of inconvenience.” It will readily be admitted that a written promise to accept a non-existing bill, may, under some circumstances, furnish a good cause of action; but how can such a promise be properly considered as an actual acceptance of that which is not in esse ? If the party has already one remedy, why distort the contract, to give him another?—Ed.]

 6 Mass. Rep. 428.

 Chitty, 139, 140, Amer. edit. — 1 East’s Rep. 98.

 Chitty, 146, 147, 149,152.

6) [Vide Thomson on Bills, p. 377. — Dow vs. Tuttle, 4 Mass. Rep. 414. — Carnagia & Al. vs. Morrison & Al., 2 Metc. 41. — Ed.]