STORY, Circuit Justice.
We are of opinion, that the affidavit, taken in connexion with the bill, is proper evidence to be left to the jury, from which they may infer an admission by the defendants, that the plaintiffs are the legal holders of the bill. It is true, that the bill is not accurately described in the affidavit, and this by mere mistake, as it must be presumed, for there is no reason to suppose a deliberate intention to commit perjury. But there cannot be a doubt, that the bill declared on, and - the bill described in the affidavit, are the same, and that the affidavit contemplated them as such. How otherwise could the existence of such a bill, or the circumstances, under which it was obtained, be at all material to the defence of the deponent? Supposing this to be so, there is strong evidence to show, that the plaintiffs are the legal holders of the bill, for the defendants admit, that it came lawfully to their possession for a valuable consideration, indeed, the whole defence stated in the affidavit turns upon the supposition, that the plaintiffs have a good title to the bill, but that it was not received under circumstances, which bind the defendants to an acceptance. Let the affidavit be read to the jury. “Valeat quantum valere potest.”
In the further progress of the cause, it appeared that previous to the existence of the present bill, viz. on the 21st of February, 1814. Messrs. Cornthwait & Carey drew another bill on the defendants for the sum of 2,700 dollars payable to Randall, and by him endorsed to the plaintiffs, which was sent to Boston, and there protested by the plaintiffs for non-acceptance, and afterwards returned protested, and information of the non-acceptance was first received by the drawers In a letter from the defendants dated the 28th of the same month of February. The letter was as follows: “Yours of the 21st instant is at hand this morning, as also a letter from Mr. Williams with a bond of indemnity. This bond, conformably to our laws, is not executed as it ought to be, but it may be otherwise in your state. It will therefore be necessary to satisfy us the scroll is correct and legal with you instead of 4 seal. We notice no seal to any of the signatures. We regret that you were so hasty in again drawing on us before the business was adjusted, and then even for a sum exceeding the nominal balance of accounts, which compels us to note the draft. We shall write our friend Williams per this mail, and will state to him our ideas respecting the bond, which he will probably determine. If Mr. Williams feels satisfied on this point,- he will inform you, and in that case jmur draft for 2,000 dollars will be honored. The balance may stand to cover expenses, which may probably be demanded before we hear from you again, even if a favorable decision takes place. We do not wish for any benefit to ourselves, but really should think the whole had better remain till the present supreme court is over, when probably the cause will be decided, and If favorably, the whole can be settled in a moment,” &c. &c.[4]
The letter written to Mr. Williams by the defendants was of the same date, and as follows: “Yours of the 21st is at hand covering Cornthwait & Carey’s bond, which we notice is signed, and a scroll instead of a seal affixed to the signature, which here would not be considered a sealed instrument and legally executed — will you determine whether that is considered, without any question, legal with you; and if you do not find it is, an instrument legally executed must be forwarded instead of it. You know the object of the bond, and of course see the propriety of our having one not only legal, but signed by sureties of unquestionable responsibility, respecting which we shall wholly rely on your judgment. You mention the last surety as being responsible; what think you of the others? They have very hastily drawn on us for 2,700 dollars, somewhat more than the nominal balance of account, which it mortifies us to refuse; but the fault is theirs, and we have written respecting the bond, Ac. and told them, you would be able to decide, whether we could consistently honor this draft to the amount of 2.000 dollars, a sum we should pay, provided you *21 are satisfied the instrument sent us is legal, and the signers of unquestionable solidity, such as you would receive for a debt due you, payable in two or three years, as you know, if not decided at the present term of the supreme court, it will not be for a year at least; or, in case they execute another bond instead of this, provided you find that necessary, which we will return you or them on receipt of the other. You will confer on us a favor by doing in this business the same, as though you were in our place.” These letters were duly sent by mail. On or about the 5th of March, 1814, Samuel Carey, of the firm of Cornthwait & Carey, called on Mr. Williams, at his counting room in Baltimore, to know if the latter had satisfied the defendants as to the sufficiency of the bond, to which inquiry Mr. Williams stated the substance, and read a part of a letter written .by him that day to the defendants. On the same day, one of the house of the plaintiffs called to know, if Mr. Williams had written the defendants in a manner calculated to satisfy them on the subject of the bond, to whom Mr. Williams stated as he had before done to Mr. Carey, and also read a copy of his letter to the defendants. This letter, dated the 5th of March, was as follows: “I have received by this morning’s mail your favor of the 28th ultimo; and am assured, that the bond transmitted to you is executed conformably to the usual mode here; and that it is sufficient for the purposes for which it was given, provided the parties possess the means. And of the last signer I have no hesitation in expressing my firm belief of his being able to meet the whole demand himself; of the principals I cannot speak with so much confidence, not being well acquainted with their resources. Under all the circumstances, I should not feel inclined to withhold from them any portion of the funds, for which the bonds were given.” The draft was after-wards taken by the plaintiffs on the 7th of March, and presented to the defendants for acceptance on the 14th of the same month, who refused to pay or accept the same.
NOTE. See Pierson v. Dunlop. Cowp. 572-574: Johnson v. Oollings, 1 East, 98: Clarke, v. Cock. 4 East. 57: Wynne v. Raikes, 5 East, 514; Wilson v. Clements, 3 Mass. 1; Banorgee v. Hovey, 5 Mass. 11: Storer v. Logan, 9 Mass. 55; McEvers v. Mason, 10 Johns. 207; Van Reimsdyk v. Kane [Case No. 10,872],
*21 Mr. Hubbard, for defendants, contended, that upon this evidence the plaintiffs 'were not entitled to recover: (1) Because there was no acceptance of the bill. A promise to accept a non-existing bill- is not in 'point of law an acceptance, although taken on the faith of such promise. Even if a different rule were admitted to exist in ordinary cases it would not apply to this case, for here the bill was taken for a pre-existing debt. (2) The defendants are not bound by the answer of Williams, for he did not pursue the special authority given him. All the signers were not of unquestionable solidity. And he cited Storer v. Logan. 9 Mass. 55.
Mr. Prescott, for plaintiffs, e contra, affirmed the law to be for the plaintiffs on both points.
STORY, Circuit Justice.
I take it to be clearly settled, that a promise to accept a non-existing bill, if shown to a third person, who, upon the faith of such promise, receives the draft for a valuable consideration, is in point of law an acceptance. Such was the doctrine of Lord Mansfield in Pillans v. Van Mierop, 3 Burrows, 1663, and Mason v. Hunt, 1 Doug. 297, which, though sometimes doubted in later times, has never been overruled, and in my judgment stands supported by principles of public policy and convenience. See Story, Bills, § 249, note 1, where all the authorities may be found collected; 3 Kent, Comm. (5th Ed.) 84, S3. I shall adhere to that doctrine until a different rule is taught me by a tribunal, which I am bound to obey. There is no foundation for the distinction, asserted by the defendants’ counsel, as to receiving such a draft for a pre-existing debt. It is sufficient, that it is received for a fair and valuable consideration, and on the faith of a promise by the drawers to accept it: Although a debt be already due, the party who receives such a draft in part payment, thereby as much gives credit to the drawer and acceptor, as a party who advances his* money upon the. draft. In respect to Mr. Williams, it is clear that the letter written to him by the defendants was not shown to the drawers or to the plaintiffs, and therefore they have nothing to do with his private instructions. The defendants referred the drawers to him for an answer to certain questions, and agreed to be bound by his answers; and if Mr. Williams gave such an answer, as satisfied the terms of the defendants’ letter to the drawers, it binds the defendants as an absolute agreement by them to accept a draft for 2,000 dollars.
The questions for the jury therefore are, upon the whole evidence, whether Williams, upon the application of the plaintiffs, after they had seen the letter addressed to the drawers, did deelaVe himself satisfied with the bond referred to in the letter; and whether the plaintiff's took the present draft upon the faith of that letter and of Williams’s declaration. If so, then the plaintiffs are entitled to recover, notwithstanding the consideration for the draft, as between them and the drawers, was a pre-existing debt, or, to bring it to the present case, was a part payment of the previous bill drawn for 2,700 dollars. And even supposing (what does not appear), that Williams, under all the circumstances, did exceed the private instructions given to him by the defendants, still, as those instructions -were not communicated to the plaintiffs, it cannot affect the right of the plaintiffs to a recovery.
Verdict for the plaintiffs.
On a writ of error to the supreme court, the judgment in this case of Payson v. Coolidge was affirmed. 2 Wheat. [15 U. S.] 66. See, also, on the same point, Sehimmelpennich v. Bayard, 1 Pet. [26 U. S.] 264: Boyce v. Edwards, 4 Pet. [29 U. S.) 121; Wildes v. Savage [Case No. 17,653]; Russell v. Wiggin [Id. 12,-165].

 This part of the letter alludes to the case •of The Hiram, then pending in the supreme court of the United States. This vessel was captured on a voyage to Lisbon, having a British license; Messrs. Cornthwait & Carey were shippers; and the proceeds had been delivered to Messrs. Coolidge & Co. as agents of Corn-thwait & Carey, on bail. The bill was drawn on those funds. See The Hiram, 8 Cranch [12 U. S.] 444.