## The Franklin Bank of Baltimore *vs.* Edward Lynch.

*Question whether an Authority to draw a Draft constituted an Acceptance, or merely a Promise to accept; and whether the Endorsee could recover against the Drawee upon the general Money counts—The form of the Declaration by the Endorsee of such Draft considered—Right of the Endorsee to sue upon the Promise to accept and pay the Draft—A bona fide holder not Affected by the state of Accounts between the Drawer and Drawee—Absence of Laches in presenting Draft for Acceptance.*

E. L. living in Westminster, Maryland, sent to B. & Co., of Baltimore, a telegram dated April 27th, 1878, in the following words: "you may draw on me for seven hundred dollars." The same was received about two o'clock p. m. the same day, being Saturday. On the Monday following, April 29th, B. & Co. drew their draft in favor of themselves on E. L. for $700, payable at sight. On the day of its date, the draft endorsed by B. & Co. was received by the F. Bank of Baltimore, and the amount thereof placed to the credit of the drawers upon the faith of the telegram and the authority thereby given, the same being shown to said Bank. The draft was sent to a Bank in Westminster for collection, and on the 7th day of May, 1878, was presented to E. L., who refused to pay the same, and it was protested for non-payment. In an action by the F. Bank against E. L. upon said draft, it was HELD:

1st. That the telegram of April 27th, cannot be deemed and treated as an acceptance of the draft.

2nd. That the suit could not be maintained as an action upon an accepted draft, nor could the plaintiff recover upon the general money counts.

The declaration did not allege an acceptance by the defendant, actual or implied, but the ground of the action as there stated was that the defendant authorized B. & Co., to draw a draft on him for $700, and promised that he would pay the said sum to the holder of the

Franklin Bank of Baltimore *vs.* Lynch.

draft on the presentation thereof to him the defendant. It then alleged that in pursuance of said authority, B. & Co. drew the draft payable at sight, that the same was endorsed by B. & Co., and passed to the plaintiff for value, and was received by the plaintiff upon the faith of the authority given to B. & Co., by the defendant. It further alleged the presentation of the draft to the defendant, and his refusal to pay the same. HELD:

1st. That this did not constitute a count upon an accepted draft, but for the breach by the defendant of his contract to accept and pay a draft drawn on him by his authority; and was sufficient, and substantially averred a breach by the defendant of his implied promise to accept and pay the draft according to its tenor and effect.

2nd. That the telegram must be construed as an authority to draw the draft payable at sight.

3rd. That such an authority implies a promise to accept the draft upon presentation, and to pay it at maturity, that is to say, at the expiration of the days of grace, viz., three days after sight.

4th. That such authority to draw, and promise to accept and pay inures to the benefit of any *bona fide* holder of the draft who takes it on the faith of the promise.

5th. That the plaintiff being the *bona fide* holder of the draft was not affected by the state of accounts between B. & Co., and the defendant.

The draft having been received by the plaintiff in Baltimore on the 29th of April, and presented to the defendant at Westminster for acceptance on the 7th of May, there was no ground for imputing laches to the plaintiff in presenting the draft for acceptance.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the corporate existence of the plaintiff was admitted. The plaintiff then gave in evidence the following telegram:

Dated WESTMINSTER, MD., — 27th, 1878.
Received at S. W. cor. Calvert and Baltimore Sts.,
Baltimore, April 27.
To A. P. Baer & Co., 7 Cheapside, Baltimore :
You may draw on me for seven hundred dollars.
EDWARD LYNCH.

And it was admitted that the same had been sent by defendant as it purports, and received by Arthur P. Baer & Co., on Saturday, 27th April, 1878, at 1 o'clock, 58 minutes, p. m.; that on Monday, following, the 29th, said telegram was shown to the cashier of plaintiff, and at the same time the draft or bill of exchange was drawn and endorsed, as it purports, and plaintiff was requested by said Baer & Co., to accept said draft as cash, and to give said Arthur P. Baer & Co. credit on their cash account in or with plaintiff, for the said sum of $700, on the faith thereof; that plaintiff did then and there, on the faith of the authority of defendant, contained in said telegram, take and accept said draft for so much cash as appears on the face thereof, to wit, $700, and give said Arthur P. Baer & Co. credit for $700, on their cash account with the plaintiff, and entered said credit of $700, in the bank-book of said Arthur P. Baer & Co., so as to show that said Arthur P. Baer & Co. had a credit for $700 cash in said bank; that the plaintiff sent said draft or bill of exchange to the Union National Bank of Westminster for collection; and then gave in evidence the protest. And it was admitted that said draft had been presented to defendant, as stated in said protest, and payment thereof was refused by defendant; that defendant resided in Westminster, and Arthur P. Baer & Co., in Baltimore; and that said Arthur P. Baer & Co. was a firm, composed of Arthur P. Baer and Charles E. Savage, who resided and carried on business as leather merchants, in Baltimore.

The defendant then offered to prove by defendant himself, that from 27th April to 7th May, 1878, he had in

Franklin Bank of Baltimore *vs.* Lynch.

hand no funds of Arthur P. Baer & Co.; to the admissibility of which proof the plaintiff objected, and the Court (MILLER, C. J., and HAMMOND and HAYDEN, J.) overruled the objection and allowed the proof to be given. The plaintiff excepted.

*Second Exception.*—After the case was closed the plaintiff offered the following prayer:

The plaintiff, by its counsel, prays the Court to instruct the jury on the pleadings and evidence, that if the jury shall believe from the evidence that on the 27th day of April, 1878, the defendant sent to Arthur P. Baer & Co., by the name of A. P. Baer & Co., the telegram given in evidence, and that the same was received at the telegraph office in the City of Baltimore, at the hour of one o'clock, fifty-eight minutes, or two minutes before two o'clock, p. m., and was, after that time, delivered to Arthur P. Baer & Co.; and shall find that said 27th April was Saturday; and shall further find, that on the 29th day of the same month, said Arthur P. Baer & Co., drew and endorsed the draft given in evidence, and offered the same to the plaintiff as and for the value of seven hundred dollars, and at the same time produced and delivered to the cashier of the plaintiff the said telegram, and that the plaintiff agreed to accept said draft as and for the value of seven hundred dollars, and as seven hundred dollars on the faith of the authority given by the defendant as expressed in said telegram, and shall find that said Arthur P. Baer & Co. delivered said draft to the plaintiff, and the plaintiff accepted the same, and gave a credit to said Arthur P. Baer & Co. for the sum of $700, as and for the proceeds of said draft, on the cash account of said Arthur P. Baer & Co., in or with the plaintiff, and that said transaction was made and entered into by the plaintiff on the faith of the authority given by said telegram, and on the faith that said defendant would pay said draft according to the purport of said telegram; and if the jury shall

further find, that said draft was sent by the plaintiff to the Union National Bank of Westminster for collection, and that said draft was duly presented to the defendant, and payment was refused by him, and the same was protested, as purports by the protest given in evidence; and if the jury shall further find, that said Arthur P. Baer & Co. was a firm doing business in the City of Baltimore, and was composed of Arthur P. Baer and Charles E. Savage, partners, the verdict of the jury must be for the plaintiff for seven hundred dollars, and interest thereon from the 7th day of May, 1878.

And the defendant offered four prayers, which need not be set out.

The Court rejected the plaintiff's prayer, and gave the following instruction in lieu of the defendant's prayers:

If the jury find from the evidence, that the firm of Arthur P. Baer & Co., on the 29th of April, 1878, drew the draft offered in evidence, and that the same was never presented to the defendant for acceptance, and that there was no acceptance of the same by the defendant, otherwise than that to be inferred or implied from the telegram of the 27th of April, 1878; and that he refused to pay the same when presented to him for that purpose, on the 7th of May, 1878, then the plaintiff is not entitled to recover under the pleadings in this cause, even though the jury may find the sending of the said telegram by the defendant, and the receipt of the same by Baer & Co., as proved by the witnesses, and that the Bank, the plaintiff, knew of such telegram and received said draft, and credited the firm of Baer & Co., with the amount thereof, on the faith of the said telegram, and the authority thereby given by the defendant to said firm.

The plaintiff excepted, and the verdict and judgment being against him, appealed.

Franklin Bank of Baltimore *vs.* Lynch.

. The cause was argued by agreement of counsel, before BARTOL, C. J., and BOWIE, J., and the decision was participated in by BRENT, GRASON, ALVEY and IRVING, J.

*Wm. P. Maulsby,* for the appellant.

The Court determined that the plaintiff below could not, under any state of facts, recover, on the ground that the telegram did not authorize the drawing of the draft at *sight;* and that the doctrine stated in *Coolidge vs. Payson,* 2 *Wheaton,* 75, does not apply to sight drafts, but only to drafts payable on demand, or at a fixed number of days after sight. This was the only question intended by the Court, as announced from the bench, to be embodied in the Court's instruction, given in lieu of the defendant's prayers; and the instruction, as contained in the record, correctly represents the intention of the distinguished Judge who prepared it.

This view of the Court was founded on a supposed report of the case in 1 *Story's C. C. R.,* 22, contained in a note to the *Amer. Ed. of Byles on Bills,* 252.

On an examination of that case, it will be found that no such question was decided. The report in the note to Byles gave only so much of the opinion of Judge STORY as was *obiter dictum,* and there ended. And the *dicta* of that Judge touched, not the question of a draft payable at sight, but that of drafts payable at a fixed number of days after sight. And all his reasonings applied only to the latter class of drafts. ·

The doctrine stated in 2 *Wheaton,* is, " that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." And the reason of the doctrine is, that such a letter " gives credit to the bill, and may induce a third person to take it."

The same doctrine is affirmed in *Townsley vs. Sumrall,* 2 *Peters,* 180, and again, by this Court in *Lewis vs. Kramer and Rahn,* 3 *Md.,* 265.

There is no difference in authority or principle, between a draft payable at sight, and on demand. Sight and demand are, in substance, identical.

If the first exception shall be necessary to be considered, the same case in 2 *Peters* is authority for the reversal of the ruling of the Court in that exception.

The question of presentment, notice, protest, &c., have nothing to do with the case.

The ground of the action is the appellant's promise to accept, and identical therewith to pay; the promise accrues to any person who shall take the draft to be drawn on the credit of the appellant's promise.

*Charles B. Roberts,* for the appellee.

The telegram contains no description of any draft that could, by possibility, have been drawn. It is so general in its terms that there is an entire absence of all reasonable certainty, and did not furnish to the appellant any justifiable excuse for its action in discounting said draft. *Ulster County Bank vs. McFarlin,* 3 *Denio,* 553; *Rees, et al. vs. Warwick;* 2 *Starkie,* 411; *Coolidge vs. Payson,* 2 *Wheaton,* 66.

The draft was not drawn until the 29th of April, 1878, (and must be presumed to have been issued when dated, *Roscoe's Nisi Prius,* 363,) and was not, therefore, in existence when the telegram was sent by appellee, on 27th of April, 1878, to A. P. B. & Co., and having been drawn payable "*at sight,*" (and not "after date,") is not in law an acceptance, and created no such liability as is sought to be enforced in the cause. *Wildes vs. Savage,* 1 *Story,* 22; *Russell vs. Wiggin,* 2 *Story,* 213.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought by the appellant against the ap-

pellee. The facts of the case were admitted, and so far as material may be thus stated.

The appellee, living in Westminster, Maryland, sent to Baer & Co., of Baltimore, the following *telegram:*

> WESTMINSTER, MD., April 27, 1878.
> To A. P. Baer & Co.,
>     7 Cheapside, Baltimore:
> "You may draw on me for seven hundred dollars."
>                         "EDWARD LYNCH."

The same was received about 2 o'clock p. m. the same day, being Saturday. On the Monday following Baer & Co. drew their draft on the appellee as follows:

> ($700.)                 BALTIMORE, April 29, 1878.
> "At sight, pay to the order of ourselves, seven hundred dollars, value received, and charge the same to account of
>                         Arthur P. Baer & Co."
> To Edward Lynch, Esq.,
>                 Westminster, Md.

On the day of its date, the draft endorsed by Arthur P. Baer & Co., was received by the appellant, and the amount thereof placed to the credit of the drawers, upon the faith of the *telegram* and the authority thereby given, the same being shown to the appellant.

The draft was sent to a Bank in Westminster for collection, and on the 7th day of May, 1878, was presented to the appellee, who refused to pay the same, whereupon it was protested for non-payment.

Upon this state of facts, the Circuit Court instructed the jury "that if they find that the draft was never presented to the defendant for acceptance, and that there was no acceptance of the same by him otherwise than that to be inferred, or implied from the telegram; and that he refused to pay the same when presented to him for that

purpose, on the 7th of May, 1878, then the plaintiff is not entitled to recover under the pleadings in this cause, even though the jury may find the telegram was sent by the defendant and received by Baer & Co., and that the plaintiff knew of the telegram and received the draft and credited the firm of Baer & Co., with the amount thereof, on the faith of the telegram, and of the authority thereby given by the defendant to said firm."

To the granting of this instruction, and also to the refusal of the prayer offered by the plaintiff, the latter excepted.

The plaintiff's prayer need not now be particularly noticed, as the questions for our consideration arise upon the Court's instruction.

And, *first.* Was the telegram equivalent to an acceptance of the draft, entitling the plaintiff to maintain a suit thereon, as on an accepted bill ?

It was decided by the Supreme Court in *Coolidge vs. Payson,* 2 *Wheaton,* 66, (affirming *S. C.,* 2 *Gallison,* 233,) "that a letter written within a reasonable time before or after a bill of exchange is drawn, describing it in terms not to be mistaken, and promising to accept, is if shown to one who takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise." That decision was based upon the cases of *Pillans & Rose vs. Von Mierop & Hopkins,* 3 *Burr.,* 1663 ; *Pierson vs. Dunlop, Cowper,* 571, and *Mason vs. Hunt,* 1 *Doug.,* 296, decided by Lord MANSFIELD.

It would seem that this is not the law in England at this time, as appears from the opinions of the eminent counsel, *Sir Wm. Follett, Sir John Bayley, Sir Frederick Pollock* and *Mr. M. D. Hill, in* 2 *Story, C. C. R.,* 219, 220, and from the case of *Bank of Ireland vs. Archer,* 11 *Mees. & Welsby,* 384 m.

But the rule laid down in *Coolidge vs. Payson* was afterwards re-asserted in *Shimmelpenick, et al. vs. Bayard, et al.,*

1 *Peters*, 264, 283, and in *Boyce & Henry vs. Edwards*, 4 *Peters*, 111, 121. It was recognized and approved by this Court in *Lewis vs. Kramer & Rahn*, 3 *Md.*, 289, and seems to be well established in this country, by the general current of judicial decisions, many of which are cited in *Hare & Wallis'* note to the case of *Bank of Ireland vs. Archer,* 11 *Mees. & Welsby*, 390, (*Am. Ed.*)

The rule was laid down in *Coolidge vs. Payson* with great strictness and precision. To construe a promise to accept as equivalent to an actual acceptance, it must be one " describing the bill in terms not to be mistaken."

. In *Boyce & Henry vs. Edwards, supra*, it was said that " Courts have latterly leaned very much against extending the doctrine of implied acceptances, so as to sustain an action upon the bill," and in the same case it was said that " the rule laid down in *Coolidge vs. Payson* requires the authority to draw, to point to the specific bill or bills to which it is intended to be applied, in order that the party who takes the bill may not be mistaken in its application ; " or in the words of Chief Justice SHAW, the authority to draw, or the promise to accept, ought " specifically to describe or designate the bill, so as to identify it, and distinguish it from all others," in order to bring it within the American cases. *Carnagie, &c., vs. Morrison, &c.,* 2 *Metcalf*, 406.

We refer also to *Wildes vs. Savage*, 1 *Story*, 22.

Upon the authorities we think it very clear that the telegram of April 27th cannot be deemed and treated as an acceptance of the draft.

The telegram does not point to or designate the draft; only the amount for which Baer & Co. were authorized to draw is mentioned, but in all other respects the telegram is silent, not specifying on what time the draft is to be drawn.

. In *Wildes vs. Savage*, 1 *Story*, 22, the learned Judge said that the rule laid down in *Coolidge vs. Payson* has

never been held to apply to a bill drawn *at sight*, or *after sight*; and assigns very satisfactory reasons why a promise to accept a draft of that kind cannot be deemed or treated as an actual acceptance.

We hold, therefore, that this suit cannot be maintained as an action upon an accepted draft, and for the same reason the appellant is not entitled to recover upon the general money counts.

The instruction of the Circuit Court refers to the pleadings, this requires us to examine them and to determine the nature and ground of the present suit. This depends upon the construction to be put upon the first count in the *narr*. If it is to be understood as declaring upon an acceptance of the draft by the appellee, it is clear from what has been said, that the plaintiff cannot recover upon it. But is that the true intent and meaning of the count?

It does not allege an acceptance by the defendant actual or implied, but the ground of the action, as there stated, is that the defendant authorized Baer & Co. to draw a draft on him for $700, and promised that he would pay the said sum to the holder of the draft on the presentation thereof to him, the defendant. It then alleges that in pursuance of said authority, Baer & Co. drew the draft payable at sight; that the same was endorsed by Baer & Co., and passed to the plaintiff for value, and was received by the plaintiff upon the faith of the authority given to Baer & Co. by the defendant. It further alleges the presentation of the draft to the defendant and his refusal to pay the same.

This is not a count upon an accepted draft, but for the breach by the defendant of his contract to accept and pay a draft, drawn on him by his authority.

The declaration would be more technically accurate, if it had averred in terms, the refusal of the appellee to accept the draft when it was presented, and his failure to pay the same at maturity; but we think it is sufficient

Franklin Bank of Baltimore *vs.* Lynch.

and substantially avers a breach by the appellee of his implied promise to accept and pay the draft according to its tenor and effect.

The telegram authorized Baer & Co. to draw on the defendant for $700. The authority did not specify or limit the terms of the draft, or the time upon which it was to be drawn. It is an authority without condition or qualification. There is no evidence of any commercial usage, or other testimony showing that such an authority imports that the draft shall be drawn payable at or after any particular time; nor is there any reason for saying that it did not authorize a draft payable at sight, this is left to the discretion or convenience of Baer & Co., and as the defendant did not impose any limitation or restriction in this respect, we think it must be construed as an authority to draw the draft in question.

Such an authority implies a promise to accept the draft upon presentation, and to pay it at maturity, that is to say, at the expiration of the days of grace, viz., three days after sight.

Now the question arises, has the plaintiff a right of action for the breach of that promise? The only objection that could be urged to the plaintiff's right to sue, would arise from the supposed want of privity between it and the defendant. The promise was made to Baer & Co., not to the plaintiff. But this objection cannot be supported. It has often been decided that such an authority to draw and promise to accept and pay, inures to the benefit of any *bona fide* holder of the bill who takes it on the faith of the promise.

In such case the import and meaning of the promise is that it is not made exclusively to the drawer of the bill, but is a promise made to any person into whose hands the bill may come *bona fide* for value; that the same shall be accepted and paid according to its tenor and effect; and such person may maintain an action for the breach of the promise.

This question was ably considered and decided by Judge STORY in *Russell, &c. vs. Wiggin,* 2 *Story,* 213, and by the Supreme Court of Massachusetts in *Carnagie vs. Morrison,* 2 *Metcalf,* 381, where the subject is treated with great ability in the opinion of Ch. J. SHAW.

The doctrine of the liability of a party, giving authority to draw, to any *bona fide* holder of the bill drawn pursuant to such authority, lies at the foundation of the law governing "letters of credit" in the commercial world, and is well considered in the two cases last cited.

In this case the plaintiff was a holder of the draft for *value; Swift vs. Tyson,* 16 *Pet.,* 1 ; *Maitland vs. the Citizens' National Bank,* 40 *Md.,* 540, and is not affected by the state of accounts between Baer & Co. and the defendant; the evidence mentioned in the *first bill of exceptions* was therefore immaterial, and ought to have been rejected.

There is no evidence of fraud, collusion or bad faith on the part of Baer & Co. and the plaintiff, in respect to the endorsement and delivery of the draft; nor is there any ground for imputing laches to the plaintiff in presenting the draft for acceptance.

For the reasons stated, we think the Circuit Court erred in giving its instruction to the jury, and that the plaintiff's prayer ought to have been granted.

*Judgment reversed, and*
*new trial ordered.*

(Decided 15th July, 1879.)