THE FIRST NATIONAL BANK OF FLORA, in the STATE OF ILLINOIS *vs.* THOMAS S. CLARK, trading as THOMAS S. CLARK & SONS.

*Draft authorized by Telegram—Authority revoked by Telegram—Draft discounted—Liability of Drawee as Acceptor— Liability of Drawee of Draft for Breach of promise to Accept.*

Where a telegram is sent authorizing a draft to be drawn, and another telegram is afterward sent countermanding the authority previously given, and on the faith of the first telegram, which only was exhibited to the cashier of the Bank, a draft was discounted by the Bank, the drawee cannot be held liable as acceptor.

The drawee of a draft will not be held liable for a breach of promise in not accepting, unless there was a promise to accept it at the time the draft was drawn.

APPEAL from the Superior Court of Baltimore City.

This suit was brought by the appellant, a National Bank in the State of Illinois, against the appellee, a commission merchant in the City of Baltimore, to recover the amount of damages alleged to have been sustained because of the failure or refusal of the appellee to pay a draft dated the 26th of September, 1882, drawn on him by a certain D. N. Ulm & Co., a firm dealing in grain and stock in the State of Illinois, for $750, payable at sight to the order of the appellant, by whom it was discounted. The case is further stated in the opinion of the Court.

*Exception.*—The evidence being closed, the plaintiff asked the following instruction :

If the jury find from the pleadings and evidence in this cause, that on the 26th of September, 1882, the defendant sent to D. N. Ulm & Co., a firm composed of D. N. Ulm,

M. B. Ulm, and D. P. Brock, the telegram offered in evidence, addressed to D. N. Ulm & Co., Flora, Illinois, and that the same was received at the telegraph office in Flora at the hour of 10.12 p. m., and was immediately thereafter delivered to D. N. Ulm, of said firm, and that on the same day, between the hours of 3 and 4 p. m., the said D. M. Ulm exhibited said telegram to Randolph Smith, cashier of the plaintiff, and enquired of him whether the plaintiff would purchase or cash a draft drawn upon the defendant as authorized by said telegram, and upon the faith of the authority given by the defendant therein, and that said cashier agreed to cash said draft on the faith of said telegram, and that thereupon the said draft was drawn as authorized by said telegram, and the said cashier took the same for, and on account of, the plaintiff, and gave to the said D. N. Ulm & Co. therefor the sum of $750, less the cost of exchange, and that said transaction was made and entered into by said cashier on the authority given by said telegram, and on the faith that said defendant would pay said draft, and that the said cashier endorsed and sent the said draft for collection for the account of the plaintiff to E. Townsend, cashier of the Importers and Traders' National Bank of New York, and that said draft was likewise endorsed and sent by the Importers and Traders' National Bank of New York, to the First National Bank of Baltimore, for collection for the account of the plaintiff, and that said draft was duly presented by said last mentioned Bank, to the defendant for payment, and was refused, and was duly protested for non-payment, they shall find for the plaintiff, and the measure of damages shall be the amount of said draft, with legal interest thereon, and cost of protest.

The defendant prayed the Court to instruct the jury, as follows:

1. If the jury find, that on the 26th of September, 1882, the defendant, in answer to an application from D. N.

Ulm & Co., for permission to draw a draft for $1500, sent to said D. N. Ulm & Co., the telegram offered in evidence, of the following tenor, viz., "On account of decline, you can draw for $750; will sell spot; hold steamer; is our action satisfactory," and that in answer thereto, D. N. Ulm & Co., sent the following telegram: "No; allow draft as required, or turn over bills; answer quick," and that the defendant replied at once, "cannot allow draft; market cent higher than close; cannot turn over shipments; will sell to best advantage;" and that after said telegram, the plaintiff cashed the draft for $750—offered in evidence, the plaintiff is not entitled to recover.

2. That by the true construction of the charter of the plaintiff, and of the Act of Congress authorizing the organization of National Banks, the plaintiff had no legal power to purchase the draft offered in evidence, and the plaintiff cannot recover.

The Court (BROWN, J.,) rejected the plaintiff's prayer and the defendant's second prayer, and granted the defendant's first prayer; the plaintiff excepted; and the verdict and judgment being for the defendant, the present. appeal was taken.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J., and the decision was participated in by Judge RITCHIE.

*D. S. Briscoe,* for the appellant.

The plaintiff's prayer should have been granted—

First. Because by the telegram of September 26th, 1882, authorizing the draft for $750, the appellee committed himself absolutely to the payment of said amount to the payee or holder of said draft, who took the same on the faith of said telegram. *Coolidge vs. Payson,* 2 *Wheaton,* 66, &c.; *Russell vs. Wiggin,* 2 *Story C. C.,* 213, 234, 236, 237, 239; *Exchange Bank of St. Louis vs. Rice,*

*et al.*, 98 *Mass.*, 288, 292; *Vance & Dick vs. Wand,* 2 *Dana*, 95, &c.; *Lewis vs. Kramer and Rahn*, 3 *Md.*, 265; *Franklin Bank vs. Lynch*, 52 *Md.*, 270, &c.

Second. Because said telegram authorizing said draft is absolute and unqualified in its terms, and required of Ulm & Co. no notice to appellee of acceptance of the authority given therein to complete his obligation, but if such notice of acceptance were necessary, the same was duly given before the telegram countermanding the authority to draw said draft was sent, and the appellee could not thereafter withdraw the same. *Anson's Law of Contract*, 12, 19, 20; *Tayloe vs. The Merchants' Fire Insurance Co. of Baltimore*, 9 *Howard*, 390; *Xenos vs. Wickham*, 2 *Law Rep.*, 296.

Third. Because said draft, drawn as authorized by said telegram, was taken by the appellant upon the *bona fides* of the promise to pay contained therein, for value and without notice; and having acted in good faith, the appellant should not, therefore, suffer loss from appellee's refusal to pay said draft, because of alleged bad faith or misconduct on the part of the drawer. "He who has trusted the fraudulent party and thereby enabled him to deceive the other, is to abide the consequence of the fraud, however innocent in other respects." *Storen vs. Logan*, 9 *Mass.*, 58; *Dezell vs. Odell*, 3 *Hill*, 219, &c.; *Mitchell vs. Reed*, 9 *California*, 204; *Franklin Bank vs. Lynch*, 52 *Md.*, 270, &c.

Fourth. Because the act of the appellee in sending said telegram, was the declaration of his responsibility to the community at large for the payment of the draft authorized therein, and thereby invited the confidence and induced the action of the appellant in taking said draft. He is therefore estopped from the denial of the legitimate and inevitable consequences of his own act.    1 *Greenleaf Ev.*, sec. 270; 2 *Parsons Cont.*, 800; *Garlinghouce vs. Whitwell*, 51 *Barbour*, 208, &c.; *Preston vs. Man*, 25

*Conn.*, 118; *Welland Canal Co. vs. Hathaway*, 8 *Wendell*, 480; *Hicks & Co. vs. Crain, et al.*, 17 *Vermont*, 449; *Wooley vs. Edson*, 35 *Vermont*, 215.

Fifth. The measure of the appellant's damages by reason of his action, relying upon said telegram, is the actual amount of loss sustained by the refusal of the appellee to pay the draft authorized by him, and discounted by the appellant, to wit: the amount in full of principal and interest of said draft from the date of presentment for payment, and cost of protest. *Russell vs. Wiggin*, 2 *Story C. C. R.*, 242; *Boyce vs. Edwards*, 4 *Peters*, 123; *Riggs vs. Lindsay*, 7 *Cranch*, 500; 2 *Daniel on Negotiable Instruments, part 6, sec.* 933.

*Joseph C. France*, and *John Prentiss Poe*, for the appellee.

ROBINSON, J., delivered the opinion of the Court.

D. N. Ulm & Co. were engaged in the business of buying and shipping grain at Flora, Illinois; and the appellee was their correspondent in Baltimore.

On the 22nd of September, 1882, Ulm & Co. wrote to the appellee for permission to draw on him for $1500, to which he replied by telegram as follows:

(No. 1.)    "BALTIMORE, Sept. 26, '82.
"On account of decline, you can draw on us for $750; will sell spot; hold steamer; *is our action satisfactory?*
"THOS. S. CLARK & SONS."

To this Ulm & Co. at once replied:
(No. 2.)    "FLORA, Sept. 26, '82.
"No. Allow draft as required, or turn over bills. Answer quick.    D. N. ULM & Co."

The appellee then telegraphed:

(No. 3.)           " BALTIMORE, Sept. 26, '82.

" Cannot allow draft; market cent higher than close; cannot turn over shipment; will sell to best advantage.

"THOS. S. CLARK & SONS."

To this Ulm & Co. replied:

(No. 4.)   " Will draw on you for $750; it is not satisfactory."

And the appellee answered:

(No. 5.)   " Market higher; do not draw for $750. Account will not stand it."

After sending telegram No. 2, and receiving telegram No. 3, in the above series, Ulm & Co. exhibited to the cashier of the appellant the telegram marked No. 1, and drew a sight draft for $750 on the appellee, which was discounted by the appellant.

This draft the appellee refused to pay.

Upon these facts two questions arise, and first, is the appellee liable *as acceptor?* That one may be liable *as acceptor* of a bill, drawn in pursuance of a written promise to accept, and upon the faith of which the holder has advanced money, is well settled in this State. *Lewis vs. Kramer & Rahn,* 3 *Md.,* 265; *Franklin Bank of Baltimore vs. Lynch,* 52 *Md.,* 270. In such cases, however, it is necessary that the bill should be drawn within a reasonable time after the promise is made, for otherwise the drawer will be presumed to have declined to act on the authority thus given, and the drawees will not be construed to have intended an indefinite liability. And second, the promise must so describe the bill, that there can be no doubt of its application to it. This was so expressly held in *Coolidge vs. Payson,* 2 *Wheaton,* 66, and held too, upon the authority of *Pillans & Rose vs. Van Mierop & Hopkins,* 3 *Burr.,* 1663; *Pierson vs. Dunlop,*

*et al., Cowp.,* 571, and *Mason vs. Hunt, Doug.,* 296. These cases were, it is true, somewhat questioned in *Johnson vs. Collings,* 1 *East,* 98, and *Clarke, et al. vs. Cock,* 4 *East,* 57, Lord KENYON saying, that the Court had in these cases carried "the doctrine of implied acceptances to the utmost verge of the law; and he doubted whether it did not even go beyond the proper boundary."

. And when the question arose in *Bank of Ireland vs. Archer,* 11 *Mees. & Wels.,* 382, decided in 1843, on a *parol promise to accept,* Baron PARK held, such promise did not amount to an acceptance, although the bill was discounted for the drawer on the faith of the promise. The question was set at rest in England by *Statute* 19 & 20 *Vict., ch.* 97, *sec.* 6, which provided that no one should be bound as acceptor unless the acceptance be written on the bill and signed by the acceptor, or by some one authorized by him.

In this country, however, the Courts have generally held to the doctrine of implied acceptance, as laid down by the Supreme Court in *Coolidge vs. Payson,* being careful at the same time not to enlarge it, for the reason that such acceptances must necessarily affect the credit of bills and impair their commercial value. And accordingly in *Franklin Bank of Baltimore vs. Lynch,* 52 *Md.,* 280, where the drawer was authorized by a telegram received late on Saturday to draw for $750, and in pursuance of which, a sight draft for $750, was drawn by him on the Monday following, this draft was discounted by the plaintiff on the faith of the telegram thus received by the drawer; and it was held, the defendant was not liable *as. acceptor,* because the telegram did "not limit or specify the terms of the draft, nor designate the time for which it was to be drawn." Now if the American doctrine of *implied acceptances* is to be adhered to at all, it does seem to me, with great deference, that *Lynch's Case* falls directly within it. The authority to draw was unqualified; the telegram was received late on Saturday, and the draft

was drawn on Monday following for the precise amount named in the telegram. Upon these facts, and in the absence of all proof to the contrary, there was, it seems to me, such a connection between the authority given and the draft drawn, as to leave no doubt of its being the identical draft drawn in pursuance of the telegram. But, be this as it may, the decision in *Lynch's Case* is binding, upon us, and being so, it is clear the appellee in this case cannot be held liable as acceptor.

We come now to the second question: Is he liable for a breach of promise? And here the Courts in this country have drawn a distinction between the liability of one *as acceptor*, and his liability on a promise to accept. And they have held that if the promise to accept or authority to draw does not designate and specify with sufficient certainty the bill to be drawn, and the party sued be not therefore liable as acceptor, he may be held liable on his promise to accept. Whether this is a *distinction* without a *difference*, as has been intimated by some Judges, it is supported by *Boyce & Henry vs. Edwards*, 4 *Peters*, 111; *Russell, et al. vs. Wiggin, et al.*, 2 *Story*, 213; *Carnegie vs. Morrison*, 2 *Met.*, 381, and approved by this Court in *Lynch's Case*, 52 *Md.*, 270. These cases rest upon the principle that the authority to draw implies a promise to accept and pay the draft, and this promise inures to the benefit of any *bona fide* holder who takes it on the faith of the promise. It is a liability therefore founded on agreement constituting a valid contract between the promisor and promisee, inuring to the benefit of a third party who has been induced to advance money on the faith of the agreement.

The liability in such cases being founded on the promise to accept and pay the draft, this suit cannot be maintained unless there was a promise on the part of the appellee to accept it at the time the draft in controversy was drawn. And this the proof shows was not the case. Ulm & Co.

had written for authority to draw for $1500, and this the appellee refused, but did authorize them to draw for $750, provided *"it was satisfactory."* If Ulm & Co. had accepted this offer, and the draft had been drawn and discounted on the faith of it, an action would lie against the appellee for a breach of promise. But instead of accepting, Ulm & Co. rejected it, and renewed the request to draw for $1500. Such were the facts when this draft was drawn—an offer by the appellee to accept a draft for $750 and its refusal by Ulm & Co. By this refusal he was no longer bound by the original offer, unless it was renewed and accepted by Ulm & Co. No principle is better settled than that an offer must be accepted on *the terms proposed.* If it be rejected and new terms are introduced, the party making the offer is no longer bound, unless he accepts the terms thus proposed.

There was no error therefore in granting the defendant's first prayer and in refusing to grant the prayer of the plaintiff.

*Judgment affirmed.*

(Decided 28th February, 1884.)